## STATE v. BARRETT.

(Siled April 11, 1905.)

*Spirituous Liquors—Possession of Liquors—Prima Facie Evidence of Unlawful Sale—Rules of Evidence—Statutes —Constitutionality.*

1. Chapter 434, Acts of 1903, making it unlawful for any person except licensed dealers, to sell or keep for sale within Union County any spirituous liquors and providing that if any person "shall keep in his possession liquor to the quantity of more than one quart within said county, it shall be *prima facie* evidence of his keeping it for sale," is not unconstitutional as an invasion by the legislative of the judicial department of the government, nor as depriving the defendant of the presumption of innocence.

2. The legislature has the power to change the rules of evidence and to declare that certain facts or conditions when shown shall constitute *prima facie* evidence of guilt; such power to be exercised within the limitations of the Constitution.

3. A statute is not void because it arbitrarily makes an act lawful in itself *prima facie* evidence of a guilty intent.

4. In an indictment for keeping liquor with intent to sell, the keeping is an essential fact to be proved and necessarily relevant and the legislature in giving an additional intensity to the proof of a fact, which is relevant, as tending to prove the fact in issue, is acting within its power and the courts cannot undertake to fix the limit in respect to the quantity prescribed as the basis of the presumption.

5. The legislature has the power to pass statutes of local application regulating the liquor traffic and to prescribe rules of evidence applicable to charges for their violation.

6. A statute making the keeping of more than a quart of liquor in a certain county *prima facie* evidence of keeping it with intent to sell, does not violate Article IV., Sec. 1., U. S. Constitution, which prohibits any State from making or enforcing any law which denies to any person within its jurisdiction equal protection of the law.

BROWN, J., dissenting.

INDICTMENT against Sampson Barrett, heard by *Judge M. H. Justice* and a jury, at the November Term, 1904, of the Superior Court of UNION County.

Defendant was charged with unlawfully and wilfully keeping for sale, etc., spirituous liquors contrary to the form of the statute, etc. Upon a plea of not guilty the State introduced one J. A. Williams, who testified that on the night in question witness and Mr. Bivens went up the road to see if they could head the defendant off. That about a mile or two from town they met him. He had two five gallon kegs of corn whiskey, a one-half gallon jug and one pint in a bottle, a little over a mile from town; he went on the public road in a top buggy. Whiskey was covered over with a lap robe. Said he got it up the country from a colored man, who he did not know. Said it did not belong to him, it belonged to some other people; that he would tell who it belonged to when it was necessary to do so; that he would prove it up. There was other testimony of the same character. It was admitted that the defendant had no license to sell liquor. He introduced no testimony. Defendant requested the court in writing to charge the jury, "that upon the whole evidence you cannot find the defendant guilty, the verdict should be not guilty." This was refused. Defendant excepted.

The court charged the jury, among other things, as follows: "Under the rules of evidence in all cases where defendant is charged with crime, it is the duty of the State to satisfy the jury beyond a reasonable doubt of the defendant's guilt. The statute under which the defendant is indicted provides that if any person other than licensed retail dealers under State laws, shall keep in his possession liquors to the quantity of more than one quart within said county, it shall be *prima facie* evidence of his keeping it for sale, within the meaning of this Act. The State insists that it has shown to you that the defendant had more than one quart of liquor in his possession in said County of Union. The State insists

that makes a *prima facie* case of guilt against the defendant and that therefore it has shown to you under the rules of evidence prescribed by this statute, that the defendant is guilty. The law is that it is presumed, or rather it is a *prima facie* case, that is, a case upon first impression made out, nothing else appearing, that the defendant had it for sale, if he is shown to have kept more than one quart of liquor in his possession within the county at one time. That is what the State insists upon. It insists that it has shown you that the defendant had the liquor and that this statute is applicable and that it is your duty to find him guilty. The defendant contends that at the time the prosecuting witness met him, that he stated that the liquor was not his, that he gave no account of it further than to say that it belonged to some other parties. The State does not rely upon his confession for a conviction in this case, but upon the fact that the liquor was found in his possession, and upon the statute. Taking this and applying this rule of evidence, if you find beyond a reasonable doubt that he had the liquor and kept it for sale, you will return a verdict of not guilty; if the State has not satisfied you upon all of the testimony, you will return a verdict of not guilty. To this charge the defendant excepted. A verdict of guilty—motion for new trial—motion denied. Judgment and appeal by the defendant.

*Robert D. Gilmer, Attorney-General,* for the State.
*Redwine & Stack* for the defendant.

CONNOR, J., after stating the facts: The defendant is indicted for violating the provisions of chapter 434, Laws of 1903, which provides that it shall be unlawful for any person, etc., other than licensed retail dealers to sell, exchange, barter or dispose of for gain, or to keep for sale, within the County of Union, any spirituous, vinous, malt and intoxicating liquors, etc. That if any person other than licensed

retail dealers, under State laws, shall keep in his possession liquors to the quantity of more than one quart within this county, it shall be *prima facie* evidence of his keeping it for sale, within the meaning of this Act.

The defendant contends that the section of the statute under which he was convicted is unconstitutional and void for that: 1st. It is an invasion by the legislative of the judicial department of the government. 2nd. That it deprives the defendant of the presumption of innocence and puts upon him the burden of showing that he is not guilty.

There can be no serious doubt of the power of the legislature to change the rules of evidence and to prescribe different rules in different classes of cases subject to well defined limitations.

"Laws which prescribe the evidential force of certain facts by enacting that upon proof of such facts a given presumption shall arise or which determine what facts shall constitute a *prima facie* case against the accused, casting the burden of proof upon him of disproving or rebutting the presumption, are not generally regarded as unconstitutional, even though they may destroy the presumption of innocence. An accused person has no vested right in this or any other presumption or law of evidence or procedure that the law-making power cannot, within constitutional limits, deprive him of. The existing rules of evidence may be changed at any time by legislative enactment. But the legislative power must be exercised within constitutional limitations so that no constitutional right or privilege of the accused is destroyed. He cannot be deprived of a fair and impartial trial by a jury of his peers according to the law of the land." McLain Crim. Law., sec. 16; *Com. v. Smith,* 166 Mass., 370; *State v. Cunningham,* 25 Conn., 195. Discussing a statute in some respects similar to ours, the Supreme Court of Massachusetts, in *Com. v. Williams,* 6 Gray (72 Mass.), 1, says: Nor does it appear that the establishment of this new

rule of evidence is in any degree the result of judicial, instead of legislative action; or that it does in any way infringe upon the indisputable right of the accused to have his guilt or innocence ascertained and the charge made against him passed upon by a jury. The statute only prescribes, to a certain extent and under particular circumstances, what legal effect shall be given to a particular species of evidence, if it stands entirely alone and is left wholly unexplained. This neither conclusively determines the guilt or innocence of the party who is accused, nor withdraws from the jury the right and duty of passing upon and determining the issue to be tried. The burden of proof remains continually upon the government to establish the accusation, which it makes. * * * The only purpose and effect of the particular clause of the statute objected to are to give a certain degree of artificial force to a designated fact until such explanations are afforded as to show that it is at least doubtful whether the proposed statutory effect ought to be attributed to it; but the fact itself is still to be shown and established by proof sufficient to convince and satisfy the minds of the jurors. * * * Making out a *prima, facie* does not change the burden of proof. * * * But if the government, in proving the delivery of any quantity of spirituous liquor, in support of a prosecution for an alleged violation of the law, prove also, as it must almost necessarily do, as a part of the transaction, the circumstances attending it, then those circumstances immediately become evidence in the case, to be weighed and considerd by the jury; and although the naked delivery would be *prima facie* evidence of the sale, and so, indirectly, of the guilt of the accused, yet this proof being accompanied by evidence of the manner in which the delivery occurred, and of the surrounding circumstances, he is not to be convicted unless upon just consideration of all the facts thus disclosed and placed before the jury they are satisfied beyond a reasonable doubt of his guilt." *Board of Excise v. Merchant,* 103

---

---

N. Y., 143; *People v. Cannon,* 139 N. Y., 32; *Voght v. State,* 124 Ind., 358; *Lincoln v. Smith,* 27 Vt., 328; *Santo v. State,* 2 Iowa, 165; Black on Intox. Liq., 60. The legislature of this, and we presume every other State, has frequently changed the rules of evidence and declared that certain facts or conditions, when shown, shall constitute *prima facie* evidence of guilt. The power to do so has always been sustained. By sec. 983 of The Code it is made a "high misdemeanor," punishable by imprisonment in the penitentiary not less than five years, to sell liquor "found to contain any foreign properties or ingredients poisonous to the human system." If such liquors are found, upon analysis of "some known competent chemist," to contain any poisonous matter, "it shall be *prima facie* evidence against the party making this sale." By section 1005, prohibiting the carrying of concealed weapons off one's own premises, it is declared that if any person shall have about his person any such weapon, such possession shall be *prima facie* evidence of concealment. The construction of this statute has been frequently before this court, but the power of the legislature has not in any case been questioned to prescribe the rule of evidence, although the effect of it has been frequently decided, as in *State v. Gilbert,* 87 N. C., 527, wherein *Ruffin, J.,* says: "The statute declares that the having of a deadly weapon upon one's person shall be *prima facie* evidence of its concealment, and this of itself seems necessarily to imply that it *may* be done under such circumstances as will not amount to an offense." In this and other cases, this court has held that upon all of the facts brought out by the State, the presumption was rebutted and the defendant acquitted. By sec. 1077 it is made a misdemeanor for any dealer to sell, etc., liquor to any minor, etc., knowing the said person to be a minor—"Provided that said sale or giving away shall be *prima facie* evidence of such knowledge." Section 1089, declaring it to be a misdemeanor to sell mortgaged property, makes the failure of the Sheriff,

etc., to find the property *prima facie* evidence of a sale with intent to hinder, defeat, etc., the rights of the mortgagee. Section 1109 makes it a misdemeanor to secrete or harbor any seaman who has deserted—knowing of such desertion—declaring that the concealment shall be deemed *prima facie* evidence of knowledge. These and other statutes not necessary to cite, show the course of legislation in this State on this subject. The author of the latest work on the law of evidence, in discussing the subject says: "A rule of presumption is simply a rule changing the burden of proof, i. e., declaring that the main fact will be inferred or assumed from some other fact until evidence to the contrary is introduced. There is not the least doubt, on principle, that the legislature has the entire control over such rules, as it has over all other rules of procedure in general and evidence in particular, subject only to the limitations of evidence expressly enshrined in the Constitution. * * * Yet this elementary truth has been repeatedly questioned, and courts have repeatedly vouchsafed an unmerited attention to the question, chiefly through a hesitation in appreciating the true nature of a presumption and a tendency to associate in some indefinite manner the notion of conclusively shutting out all evidence and that of merely shifting the duty of producing it. Fortunately, sound principle has almost everywhere prevailed, though at an unnecessary expense of argument and hesitation." Wigmore on Evidence, 1354.

"With what intent a person keeps intoxicating liquors, is always a question of fact for the jury, to be determined upon a view of all the evidence. And in disposing of that question, they are required by the statute to consider the keeping of the articles in the manner specified in the statute, as presumptive evidence of an unlawful intent. But that evidence may be rebutted and controlled by the circumstances, as would be the case in the instances of the sexton and carman alluded to, as well as by other evidence in the case,

STATE *v.* BARRETT.

whether shown by the accused·in his defense, or by the State
in connection with the evidence proving the possession.   With
such evidence, the jury may also take into consideration the
presumption of the innocence of the accused." *State v. Cun-
ningham, supra.*   The defendant says that conceding this to
be true the statute is void for that it arbitrarily makes an
act lawful in itself *prima facie* evidence of a guilty intent.
This criticism would apply to almost every case in which an
act is made *prima facie* evidence of guilt.   As illustrating
this—carrying a weapon off one's premises is entirely law-
ful and the right to do so, it has been said, is secured by the
Constitution.   Const., Art. I., sec. 24.   It has been expressly
held that the act in this respect is constitutional.   In *State v.
Cunningham, supra,* the court says: "It has been said that
the keeping of spirituous liquors is a lawful act, and being
such, the legislature has no constitutional power to make it
evidence of an unlawful act.   Many acts at common law are
lawful, and yet the performance of them is prohibited by
the legislature, in the legitimate exercise of their sovereign
power.   Even the sale of such liquors is not by the common
law unlawful.   It is only made so by statute.   And if the
legislature can constitutionally prohibit such sale, we see not
why they may not properly prescribe what acts shall be con-
sidered as evidence of an intent to make the sale."   The
slightest reflection will show that if this objection to the stat-
ute could be sustained, the power of the legislature would be
practically denied.

The defendant next calls into question the validity of the
statute because he says the fact made *prima facie* evidence of
the guilty intent has no relation to the criminal act and does
not tend to prove it.   First, because the possession of liquor
does not tend to show an intent to sell it, and second, the pos-
session of a quantity more than one quart is entirely consistent
with such possession for personal or domestic use.   It must be
conceded that some of the courts have placed this limitation

upon the legislative power. *Peckham, J.; in People v. Cannon, supra,* says: "The limitations are that the fact upon which the presumption is to rest must have some fair relation to or natural connection with the main fact. The inference of the existence of the main fact, because of the existence of the fact actually proved, must not be merely and purely arbitrary or wholly unreasonable, unnatural or extraordinary, and the accused must have in each case a fair opportunity to make his defense, and to submit the whole case to the jury to be decided by it after it has weighed all the evidence, and given such weight to the presumption as to it shall seem proper." *State v. Beswick,* 13 R. I., 211. This case has been criticised in the following language: "The opinion discloses confused notions as to the nature of presumptions and burden of proof."

"It has occasionally been suggested that these legislative rules of presumption, or any legislative rules of evidence, must be tested by the standard of rationality, and are invalid if they fall short of it. But this cannot be conceded. If the legislature can make a rule of evidence at all, it cannot be controlled by a judicial standard of rationality, any more than its economic fallacies can be invalidated by the judicial conceptions of economic truth. Apart from the Constitution, the legislature is not obliged to obey either the axioms of rational evidence or the axioms of economic science. All that the legislature does in such an event is either to render admissible a fact which was before inadmissible, or to place the burden of producing evidence on the opposite party. When this has been done, the jury is free to decide; or, so far as it is not, this is because the party has voluntarily failed to adduce contrary evidence. There is here nothing conclusive, nothing prohibitive. So long as the party may exercise his freedom to introduce evidence, and the jurors may exercise their freedom to weigh it rationally, no amount of irrational

legislation can change the result." Wigmore on Evidence, sec. 1354.

We think that a full recognition of the limitation does not invalidate the statute under discussion. Certainly the legislature has the power to prohibit the keeping of liquor with intent to sell. Black on Intox. Liq., 387. It is equally clear that without any statutory rule of evidence, the keeping is an essential fact to be proved and necessarily relevant. The quantity, place, circumstances, etc., in and under which it is kept are to be considered by the jury in passing upon the intent. Black on Intox. Liq., 525. This, for the manifest reason that they have a relation to the offense charged, to-wit, the keeping with intent to sell. Therefore when the legislature gives an additional intensity to the proof of the fact which is, without any statute, relevant as tending to prove the fact in issue, we are unable to see how it can be said that it exceeds its constitutional limitation in this respect. The defendant, however, contends that the quantity named, to-wit, "more than a quart," has no relation to and does not tend to prove the offense. The power being conceded, it is difficult to conceive how the court could undertake to fix the limit in respect to the quantity prescribed, as the basis of the presumption. It will be observed that it is not the keeping of a quart, or any fixed quantity beyond a quart, which is made a *prima facie* case, but "more than a quart." Of course, the *prima facie* case would be stronger or weaker according to the quantity kept in excess of a quart. We would find it exceedingly difficult to prescribe any limit to the power of the legislature in this respect. We must ever keep in mind the fundamental principle that courts must not call into question the validity of statutes because they may not think them wise or wholesome. To do so would be to introduce untold confusion and uncertainty into our jurisprudence. It has been so frequently and forcibly said that within the sphere of its power the legislature is supreme, that it does not need the

citation of authority or extended reasoning to sustain it. As enforcing this truth we quote: "Whether the legislature acted wisely or not is a question with which we have nothing to do. The power being admitted, its abuse cannot affect it; that must be for the legislative consideration. It is sufficient that the judiciary claim to sit in judgment upon the constitutional power of the legislature to act in a given case. It would be rank usurpation for us to inquire into the wisdom or propriety of the act." *Nash, C. J.*, in *Taylor v. Com'rs,* 55 N. C., 141. "It will not throw much light on a question like this to put extreme cases of abuse of the power to test the existence of the power itself." *Shaw C. J.,* in *Norwood v. Com'rs,* 13 Pick, 60. "There is no shadow of reason for supposing that the mere abuse of power was meant to be corrected by the judiciary." *Black, C. J.,* in *Sharpless v. Mayor,* 21 Pa. St., 147. See also *Iredell, J.,* in *Calder v. Bull,* 3 Dal., 386. In *Cunningham's case, supra,* the act provided that the finding of spirituous liquors in possession of a person, except in his dwelling house, should constitute *prima facie* evidence that it was kept for sale. In *Williams' case, supra,* the statute provided that the delivery of liquor in any other place than a dwelling house should constitute *prima facie* evidence. In *Merchant's case, supra,* the act provided that where the person is seen to drink intoxicating liquors on the premises of one who had license to sell liquor not to be drunk on the premises, should constitute *prima facie* evidence of guilt. In *Cannon's case, supra,* the act made the possession of a junk seller of second hand bottles and kegs presumptive evidence of the unlawful use. In *Santo's case, supra,* the statute made the keeping of liquor in any other place than the dwelling or its dependencies *prima facie* evidence of keeping liquor with intent to sell. These acts were all sustained. See also *Lincoln v. Smith, supra; Am. Fur Co. v. U. S.,* 2 Peters, 358. Notwithstanding the decision in *Beswick's case, supra,* we find the Supreme Court of Rhode Island at the same

term in *State v. Mellor,* 13 R. I., 666, holding that a statute providing that evidence of the sale or keeping of intoxicating liquors for sale shall be evidence that the sale or keeping is illegal, was valid—the court saying: "This inference or presumption, without the aid of the statute, would not be available as legal evidence, but we think that it was in the power of the General Assembly to make it so, and when it once becomes evidence, it is for the jury, not the court, to say whether or not it is sufficient to prove the fact, for the proof of which it is adduced." We know of no rule based upon sufficiently general observation or experience which would enable this court to say, as matter of law, that the keeping of more than a quart of liquor in one's possession has no relation to an intent to sell. It will be observed that this is a local statute applying only to the County of Union. Upon what basis the legislature adopted the standard, we are not informed. There is no evidence before us how much liquor is usually kept for private or domestic use by citizens of that county. The evidence in this case is the extent of our information. Certainly there is nothing here to bring us to the conclusion that the standard fixed is so unreasonable and arbitrary as to have no relation to the offense charged. An examination of a large number of cases from those States which have enacted repressive legislation in regard to the liquor traffic shows that it has been found necessary to incorporate this and similar provisions in their statutes, and the courts of such States have, with the exception of the one case in Rhode Island, uniformly sustained them. That court has sustained statutes similar to the one before us. If we should say that the keeping of "more than a quart" has no relation to the offense, what standard shall we set? Upon what more rational basis could we fix the limit—at a gallon or any other quantity? It is not our province or duty to supervise the legislative mind in this regard. To the suggestion that this law may be abused in its execution and the personal and prop-

erty rights of the citizen invaded, it is sufficient to say that human wisdom has never yet devised any system of legislation or jurisprudence to which the same objection may not be urged. It would be difficult to find any principle of the common law or any statutory law which does not contain, within itself, the germ from which an oppressive administration may not develop. After all that can be said and done, the safety of the citizen is dependent upon the observance and enforcement of his constitutional rights, as interpreted and enforced by officers of his own selection. As was said by a great jurist and statesman, whose life was devoted to the defense of constitutional liberty, "there is nothing more easy than to imagine a thousand tyrannical things which the legislature may do if its members forget all their duties, disregard utterly the obligations they owe to their constituents and recklessly determine to trample upon right and justice." *Black, J.,* in *Sharpless v. Mayor, supra.* While we are to keep a watchful eye, clear mind and firm hand upon every threatened invasion of the constitutional guarantees of the citizen, we are to accord to the several departments of the government, and those who may administer them, the same jealous regard in that respect which we ourselves exercise.

As indicating that the General Assembly, in its desire to suppress the liquor traffic in the County of Union, in response (as we must assume) to the wishes of the citizens of that county, we note that it has carefully guarded the sanctity of the dwelling by requiring any person, applying for a warrant to search suspected premises, to file an affidavit setting forth that the affiant has reason to believe that the owner of such premises is keeping for sale liquors as prohibited by this act, which reasons shall be set forth in the affidavit, and if the justice of the peace * * * shall deem such reasons sufficient, he shall issue his warrant. * * * It will thus be seen that no citizen may be disturbed in his premises, under this statute, until a judicial officer shall determine

upon sworn evidence that sufficient reason exists therefor. While the statute may be open to criticism in respect to its rigid provisions, such criticism must be addressed to the legislative department of the government which represents and gives expression to "the State's collected will," rather than to us who are confined to the question of its validity measured by the Constitution of the State.

The defendant next suggests that the statute violates the Constitution in that it prescribes a rule of evidence applicable only to the citizens of Union County, and not to other counties in the State. The force of this contention depends upon the power of the legislature to declare that the keeping of spirituous liquors with intent to sell in Union County is a misdemeanor, or in other words, to pass statutes of local application upon the subject. This power has been so long recognized by the court and exercised by the legislature that we do not deem it necessary to re-examine the foundations upon which it rests. In *State v. Muse,* 20 N. C., 463, *Ruffin, C. J.,* says: "There can be no doubt that the legislature hath power, and that there is an obligation in sound morals and true policy on that body, to protect the decency of Divine worship by prohibiting any actual interruption of those engaged in worship or any practices at or near the place, in which the legislature may see a tendency to produce such interruptions." The act referred to prohibited the sale of spirituous liquors near a church. This court, in *State v. Joyner,* 81 N. C., 537, says: "Nor is the competency of the legislature to pass local acts such as the present now open to question. The power has been so long and so often exercised and recognized in cases coming before this and other courts that its existence must be considered as settled." *State v. Stovall,* 103 N. C., 416; Black on Intoxicating Liquor, sec. 40. The power to pass the law of local application being conceded, we are unable to perceive any reason why the legislature may not prescribe rules of evidence, within the limitations fixed, ap-

plicable to charges for its violations; nor are we cited to any authorities to the contrary.

The defendant suggests that the statute violates Article XIV., section 1 of the Federal Constitution, which prohibits any State from making or enforcing any law which denies to any person within its jurisdiction equal protection of the law. The question viewed from this standpoint has been so thoroughly and ably discussed and settled by the Supreme Court of the United States in *Mugler v. Kansas*, 123 U. S., 623, that we do not deem it necessary to do more than refer to that case.

It is seriously insisted, however, that to sustain this act would be to overrule *State v. Divine*, 98 N. C., 778. We have carefully examined the opinion of the Chief Justice in that case and find nothing in the question decided which conflicts with the conclusion at which we have arrived. The defendant was indicted under a statute containing very peculiar provisions, the only one of which it is necessary to be considered here, is that declaring that when any live stock should be killed or injured by any car or engine running on a railroad in certain enumerated counties, such injury * * * should be a misdemeanor; that the president, superintendent, engineer or conductor may be indicted therefor. It was further provided that when any stock was killed or injured in such counties, it would be *prima facie* evidence of negligence. The defendant (superintendent of the road) was indicted under the statute. The jury found that the defendant was not upon the train or engine when the stock was injured, and in no way connected therewith. The eminent counsel for the defendant insisted, among other manifest reasons, that the statute was invalid for that it rendered the act criminal in one locality which was not so in another, and raised out of an act done by one employee a presumption of guilt against another employee who did not in any way participate in it. This court sustained the objection. The distinction between

the statute then under consideration and the one before us is manifest. The act which was made the *prima facie* evidence of guilt in our case can be committed only by the person accused. The "keeping" made *prima facie* evidence must be the personal act of the defendant.

We have given to the questions discussed by the defendant's able and zealous counsel more than usual consideration. His Honor carefully guarded the right of the defendant to be tried by a jury of his county and convicted only when they were satisfied beyond a reasonable doubt upon the whole of the evidence that he kept liquor for sale, expressly stating to the jury that if the State had not thus satisfied them upon all the testimony, they should return a verdict of not guilty. It would seem that in the light of the testimony no other conclusion could have been reached.

No Error.

WALKER, J., concurring in result: Having with him so large a quantity of liquor in packages of different size and covered over with a lap robe, was sufficient of itself to constitute *prima facie* evidence of the defendant's guilty possession. When proof of a certain fact is made *prima facie* evidence of the main fact to be established, the law does not mean that there is any presumption of guilt thereby created, but that there is sufficient evidence to go to the jury and upon which they may convict if there is no countervailing testimony. It does not shift the burden of proof, but the State is still required to prove its case beyond a reasonable doubt. Wig. Ev., sec. 2494 (2); *Womble v. Grocery Co.,* 135 N. C., 474. The case was submitted to the jury in this view of the law, and I am unable to see how any substantial error was committed by the court when the jury were permitted to consider all of the evidence. The mere fact that reference was made to the statute did not prejudice the defendant, when his possession, under the circumstances clearly shown by the evi-

dence and not disputed, was sufficient to carry the case to the jury. He had the full benefit of the doctrine of reasonable doubt upon the whole evidence, which was submitted to the jury, and the case was fairly and correctly tried.

BROWN, J., dissenting: I dissent from so much of the opinion of the court as undertakes to sustain the constitutionality of section 3,, chapter 434, Public Laws of 1903, relating to the citizens of Union County, to-wit: "That if any person, other than licensed retail dealers under said laws, shall keep in his possession liquors to the quantity of more than a quart within said county, it shall be *prima facie* evidence of his keeping it for sale within the meaning of this act."

The provisions of this act make it an indictable offense to keep liquor in one's possession with intent to sell it, and at the same time prohibits the sale of intoxicating liquors within the County of Union. Irrespective of the provisions of the act, I am of opinion that there was sufficient testimony to be submitted to the jury that the defendant did have in his possession liquor with intent to sell it. But in as much as His Honor in charging the jury gave force and effect to the *prima facie* case contemplated by the statute, I think a new trial should be granted, because it is impossible for us to determine upon what view of the evidence the jury rendered their verdict. I am of opinion that the Legislature has no power to declare that the mere possession of more than a quart of liquor shall be *prima facie* evidence that the possessor intends to sell it, and thereby subject himself to the penalties and pains of a criminal prosecution. The Legislature has not seen fit, even if it had the power to do so, to prohibit the use and possession of intoxicating liquors within Union County. It has only prohibited the keeping in possession of intoxicating liquors with intent to sell. The possession and use of intoxicating liquors are lawful acts which any citizen

of that county may do with impunity. The Legislature has
very extensive powers in respect to fixing, changing or modi-
fying the rules of evidence to be applied by the courts, but
the exercise of this power in relation to criminal proceedings
is subject to very important limitations prescribed by the
organic law of the country which legislatures, courts, and all
others in authority must respect. Among other limitations
the Legislature cannot deprive any citizen of Union County
of that equal protection of the laws of the land which is
guaranteed by the 14th Amendment of the Constitution of
the United States; nor can it deprive such citizen of the pro-
tection of that fundamental principle which declares him to
be innocent until he is proven guilty to the full satisfaction
of a jury of his peers. This presumption of innocence is
thrown around the accused and he is entitled to it at every
stage of the legal proceedings instituted against him. In
prosecutions under the liquor laws there have been many
legislative provisions in the different States tending to facili-
tate the conviction of offenders by admitting presumptive or
indirect proof of certain facts, and generally these acts have
been so framed as to meet with no valid constitutional ob-
jection, but there is one underlying principle which has been
observed in the preparation of all such acts except the one
now under consideration. "In criminal cases the limitation
has been imposed that the acts declared *prima facie* evidence
of the crime must have some relation to the criminal act
and tend to prove the crime." Jones on Evidence, vol. 1,
sec. 194, and cases cited.

One of the most sacred rights which guard the liberty of
the citizen in this and all other States of this Union is the pre-
sumption of innocence which the law throws around him.
While the Legislature may make certain acts of the individ-
ual and certain facts connected with him *prima facie* evi-
dence of guilt, yet it is everywhere conceded that the act is
obnoxious to the organic law unless the facts have some ten-

dency to prove guilt. In other words, the Legislature cannot by its arbitrary will give to a perfectly lawful and innocent act an unlawful and criminal effect, or draw from acts warranted by law, and which everyone may rightfully do, an unlawful, improper and criminal intent. By this act the Legislature has withdrawn from the citizens of Union County the equal protection of the law which is given to the other citizens of the State. In no other county in North Carolina is the citizen so situated that he may perform a perfectly lawful act and enjoy a legal right and at the same time, by the mere force of an arbitrary statute, have inferred from it a wrongful and criminal intent. The question as to what is a denial of the equal protection of the law is one which has been before the Supreme Court of the United States in a great many cases. The decisions of the highest courts of the States will show that it is one not easily determined. No rule can be formulated that will cover every case, but it has been generally said that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in the same jurisdiction and in like circumstances. *Missouri v. Lewis,* 101 U. S., 31. *Justice Field* says, in *Barbier v. Connolly,* 113 U. S., 27, that "the 14th Amendment means that equal protection and security shall be given to all persons under like circumstances in the enjoyment of their personal and civil rights." "Due process of law and the equal protection of the laws are secured, if the laws operate on all alike and do not subject individuals to an arbitrary exercise of the powers of government." *Duncan v. Missouri,* 152 U. S., 377. No duty rests more imperatively upon the courts than the enforcement of these fundamental provisions intended to secure with equality the rights which are the foundation of all free government. It doubtless conduces greatly to the peace, happiness and morality of a community to prohibit the illicit sale of intoxicating liquors, but in doing so it is of equal, if not

greater, importance that the fundamental rights of the citizen under our organic law should not be ruthlessly destroyed. "The State has undoubtedly the power by proper legislation to protect the public morals, the public health and the public safety, but if by their necessary operation its regulations looking to either of these ends amount to a denial to persons within its jurisdiction of the equal protection of the laws, they must be deemed unconstitutional and void." *Connolly v. Sewer Pipe Co.,* 184 U. S., 558.

I do not question the right of the Legislature to make the possession of intoxicating liquors with intent to sell an indictable offense any more than I question its right to prohibit the sale of it entirely within the entire State or any county or township in it, but I do deny its right in the prosecution of crime under such laws to take away from the citizen the fundamental rights which are thrown around him to protect him from the penalties and pains of a criminal prosecution.

It will be seen by an examination of the cases, I think, that there is absolutely no authority against the position I have taken, although innumerable cases can be found in which the Legislature has made the possession of intoxicating liquors *in certain cases and under certain circumstances prima facie* evidence of an intent to sell. But I do not think my brethren can find any statute where the mere fact of the possession of three pints of intoxicating liquors under any and all circumstances has ever been made *prima facie* evidence of a criminal intent to sell, or where any such statute has ever been upheld by any court in this country. I refer to a number of cases: *State v. Cunningham,* 25 Conn., 195; *State v. Morgan,* 40 Conn., 44; *Commonwealth v. Wallace,* 7 Gray (Mass.), 222; Black on Intoxicating Liquors, sec. 60. In most of these cases the statutes under consideration relate to certain houses wherein liquor is found. Some of them provide that where liquor is delivered in certain quanti-

STATE *v.* BARRETT.

ties such delivery shall be sufficient evidence of sale. *State v. Hurley,* 54 Me., 562. Other statutes provide that where persons are seen drinking intoxicating liquors on certain premises it shall be *prima facie* evidence that it was sold by the occupant of such premises with intent to be drunk thereon. Statutes have been upheld which provided that proof of the finding of liquor in the possession of the accused under certain circumstances specified in the act shall be received and acted upon by the court as presumptive evidence that such liquor was kept or held for sale contrary to law. Again, the notorious character of certain premises, when proven, has been held to be *prima facie* evidence of certain facts. The statutes are too numerous to set out or comment upon at length. Suffice it to say that all of them contain specific circumstances or relate to certain premises, and none of them provide that the mere fact of the possession of a quantity of liquor exceeding a quart, without any exception whatever, shall be *prima facie* evidence of crime.

In *Commissioners v. Merchant,* 103 N. Y., 148, *Judge Earle* says: "It would not be possible to uphold a law which made an act *prima facie* evidence of crime which had no relation to a criminal act and no tendency whatever by itself to prove a criminal act." * * * But such is not the effect of declaring any circumstance or any evidence, however slight, *prima facie* evidence of a fact to be established leaving the adverse party at liberty to rebut it. Here the act which is made *prima facie* evidence of an illegal sale takes place upon the premises of the person charged; it has some relation to and furnishes some evidence of an illegal sale, and occurs in a place where liquors are authorized to be kept and sold." *Judge Peckham,* now of the Supreme Court of the United States, in *People v. Cannon,* 139 N. Y., 43, says: "It cannot be disputed that the courts of this and other States are committed to the general principle that even in criminal prosecutions the Legislature may, with certain limitations, enact that

where certain facts have been proved they shall be *prima facie* evidence of the existence of the main fact in question. The limitations are that the fact upon which the presumption is to rest must have some fair relation to or natural connection with the main fact. The inference of the existence of the main fact, because of the existence of the fact actually proved, must not be merely and purely arbitrary." In *State v. Shank,* 74 Iowa, 652, it is said: "The defendant being authorized to keep liquors for lawful purposes, no presumption arises against him that they are kept for unlawful purposes. The law will presume, in the absence of proof to the contrary, that the defendant kept them for lawful purposes, for men are presumed to act in obedience to the law where their acts are not shown to be unlawful." The Supreme Court of Indiana says: "We should unhesitatingly declare a statute void which attempted to enact that a person should be convicted of an offense upon proof of facts which might be consistent with innocence, yet it has often been held that the Legislature in defining a crime may also enact that proof of facts which are universally recognized as indicating guilt shall be sufficient *prima facie* evidence of the commission of the offense defined by statute." *Voght v. State,* 124 Ind., 361. In the case of *People v. Lyon,* 27 Hun. (N. Y.), 180, *Judge Larned* says: "In the present case the defendant is charged with having sold liquor with intent that it should be drunk on the premises. It is right to have the question tried by jury. That means that the jury are to determine from their own judgment upon the facts legally given in evidence whether or not the defendant is guilty. If the Legislature can declare that a certain fact is *prima facie* evidence of the defendant's guilt, such a declaration means that the jury must convict unless the defendant explains away this evidence." In giving a number of pertinent illustrations, the learned Judge says: "If the Legislature can legally enact such a clause, they might enact that if a dead body were

found in any house that should be *prima facie* evidence that the occupant of the house had murdered the deceased, because the legislative enactment is purely arbitrary and need have no regard to the connection or want of connection between the evidence and the conclusion which is to be proved."

In *State v. Beswick,* 13 R. I., 218, the Court says: "It will be observed that the statute makes proof of the facts mentioned in it not only evidence against the accused, but *prima facie* evidence of his guilt, so that upon proof of that it is the duty of the jury to convict unless the presumption is rebutted by other evidence. * * * We have carefully considered the question and have come to the conclusion that the statute is not constitutional. It virtually strips the accused of the protection of the common law maxim that every person is to be presumed innocent until he is proved guilty, which is recognized in the Constitution as a fundamental principle of jurisprudence. * * * Certainly the accused does not have the judgment of a jury if the jury is compelled by an artificial rule to convict him upon proof of a fact which is consistent with his innocence. * * * Suppose the General Assembly were to enact that if any person was generally reputed to be guilty of murder it should be *prima facie* evidence of his guilt. Could it be said that his life or liberty had been taken from him by the judgment of his peers? * * * Indeed, to hold that a Legislature can create artificial presumptions of guilt from facts which are consistent with innocence is to hold that it has the power to take away from the judicial trial the very element which makes it judicial. * * * It is true the accused has the right of defense and if he can adduce satisfactory evidence he may rebut the statutory presumption, but the production of such evidence is not always easy even with the right to testify in his own behalf." In *State v. Beach,* 43 N. E. Rep. (Ind.), 951, it is said: "A law which makes an act *prima facie* evidence

of crime, which has no tendency whatever to establish a criminal act, is unconstitutional and void."

The right of which the Legislature deprives the citizens of Union County is probably the most sacred and valuable of all the rights guaranteed to the citizens of this country in our National and State Constitutions. The words "due process of law," and "equal protection of the laws," as used in the 14th Amendment, mean practically one and the same thing. The words "the law of the land," were borrowed from Magna Charta and have a recognized significance. *Judge Cooley,* in his work on Constitutional Limitations, sec. 355, cites with approval a definition by *Judge Edwards,* in *Westervelt v. Gregg,* 12 N. Y., 202: "Due process of law undoubtedly means in the due course of legal proceedings, according to those rules and forms which have been established for the protection of private rights." The effect in criminal prosecutions is to secure to the accused a judicial trial according to the general principles of the common law, and not in violation of those fundamental rules which have been established by the common law for the protection of the citizen. Among these rules there is none which is more fundamental than the rule that every person shall be presumed innocent until he is proven guilty. "This rule," said *Judge Selden,* in *People v. Toinbee,* 2 Parker, Cr. R., 490, "will be found incorporated into many of our State constitutions, and is one of those rules which in our constitutions are compressed into the brief but significant phrase 'due process of law.' " In the case of *State v. Divine,* 98 N. C., 783, *Chief Justice Smith* quotes with approval from Judge Cooley's Constitutional Limitations, page 309: "The mode of investigating the facts, however, is the same in all, and this is through a trial by jury surrounded by certain safeguards which are a well understood part of the system and which the government cannot dispense with." "Meaning, as we understand," says *Judge Smith,* "that the charge must go before the jury and

the guilt of the accused proved to them, with the presumption of innocence until this is done." In *Cummings v. Missouri,* 4 Wall., 328, *Mr. Justice Field* says: "The clauses in question subvert the presumption of innocence and alter the rule of evidence which heretofore under the universally recognized principles of the common law have been supposed to be fundamental and unchangeable." In *Wynehamer v. People,* 13 N. Y., 446, the court says that "the Legislature cannot subvert that fundamental rule of justice which holds that everyone shall be presumed innocent until he is proved guilty." In *San Mateo v. Railroad,* 8 A. & E. R. R. Cases, 10, the Supreme Court of the United States says: "Whatever the State may do, it cannot deprive any one within its jurisdiction of the equal protection of the laws, and by equal protection is meant equal security under them by every one on similar terms in his life, his liberty and in the pursuit of happiness."

Subjecting the statute under consideration to the test as laid down by these authorities, the conclusion to my mind is irresistible that it is obnoxious to our organic law both Federal and State. What is the fact to be proven which constitutes the gravamen of the offence? It is certainly not the mere possession of more than one quart of liquor. That is a perfectly lawful act not only in Union County, but in every other county in North Carolina. It is the intent to sell which constitutes the crime. Does the possession of three pints of liquor under any and all circumstances tend to prove that the possessor intends to sell it? If it does, the act is constitutional. If it does not, it is violative of the organic law of the land, if the authorities I have quoted are worth anything. What is there in the mere possession of three pints of liquor which would tend in the least degree to indicate that the owner of it kept it for sale or ever intended to sell it? There are five thousand individuals in this country who purchase liquor for their own consumption to one who pur-

chases it for sale. To give the act the effect contended for it must be construed with reference to the purpose of the one without having any regard whatever to the purpose of the five thousand. The act must not be tested by the evidence in this case. Independent of the act, I am willing to admit that the evidence was amply sufficient to support a conviction. But the act in question is purely arbitrary and it has been given that effect. It does not, as the cases I have referred to, give any specified circumstances under which the presumption shall arise. It applies to the possesion of three pints of wine with as much force as to the possession of three barrels of whiskey. A lady who places on her dinner table for the entertainment of her guests three pints of claret is as much a *prima facie* criminal as the peddler who hauls around in his covered wagon a barrel of "untaxed corn" with his pint pot tied to the spigot. The latter might justly and legally constitute a *prima facie* case of "intent to sell;" but it would be impossible to infer such an intent from the former. The possession of three pints of liquor in ninety-nine cases out of a hundred is far more indicative of an intent to drink than of an intent to sell. Yet the statute makes no distinction. It "feeds all out of the same spoon," and invests all persons with equal criminality in the eyes of the law regardless of circumstances or surroundings, reason or logic. The individual in Union County who dares to have in his residence three pints of scuppernong wine, prescribed as a tonic for his ailing wife, is in danger of having his liberty taken from him, and sent to break rock upon the county roads by virtue of a few little words in this statute. It will not do to say that no jury would convict a man under such circumstances. He is placed on the defensive. The shield and panoply of innocence is stripped from him, and he is at the mercy of twelve men. Fanaticism has done worse things than convicting a man under such circumstances however unjustifiable we think it may be. This protection is given to the citizen not to pre-

vent his conviction alone when charged with crime, but it is given him to protect him from unjust, improper, mortifying and expensive criminal prosecutions, and it is the most valuable and priceless possession the individual has. The citizens of Union County are as much entitled to it as any other citizens of North Carolina or the United States.

The court does not undertake to explain how the possession of more than a quart of liquor can possibly be significant of a purpose to sell, and I am at a loss to know. The mere possession of three pints of liquor is no more indicative of the owner's purpose and intent in relation to it than is the possession of three pints of flour, meal or anything else. Men sell liquor, it is true, and so they do other things, but inasmuch as the vast majority are buyers of such articles and not sellers, I fail to see how mere possession of so small a quantity indicates an intent to sell as strongly as it does a purpose to consume.

Unless the court can show that the possession of such a quantity of liquor indicates a purpose to sell, it must hold that the Legislature can by arbitrary enactment make a perfectly innocent and lawful act evidence of a criminal intent, although such act has no tendency to prove guilt. And such is really the effect of the decision in this case.

I have cited from the opinions in a few of the leading precedents referred to in the judgment of the court, and the citations sustain fully my contention. All the statutes referred to in the opinion of the court or in the cases cited therein make certain acts, which tend to prove guilt, *prima facie* evidence of it. None of them undertake to make a purely lawful act, from which no unlawful intent and purpose can be reasonably inferred, evidence of crime. But all the cases, without an exception so far as I can discover, declare that cannot be lawfully done. Space will not permit me to comment on all these statutes, but I will cite our own statute against carrying concealed weapons as an illustration. The statute makes the

possession of the weapons named in it (pistols, bowie knives, etc.), off one's premises *prima facie* evidence of concealment. That act is plainly constitutional. Why? Because the weapons named in the act may be and commonly are carried in the pocket and concealed from view. When the weapon is seen in the hand of the owner off his premises, it is a fact tending to prove that he took it from his pocket and thereby had it concealed on his person. If I had space I could point out the true significance of every act of the Legislature mentioned by the court, and easily show that the facts declared to be *prima facie* evidence of crime have some tendency to prove it, while the fact stated in the act under consideration has no such tendency.

The General Assembly in my opinion has just as much right to declare that in all indictments in Union County for having liquor in possession with intent to sell, the defendant shall be presumed to be guilty and shall be required to establish his innocence, as it had to enact the statute in question, wherein, by mere arbitrary words, a perfectly lawful and innocent act is declared to be *prima facie* evidence of a guilty intent. There are some things the General Assembly cannot do. It may declare that hereafter "black shall be white," but it cannot make it so. Nor can it lawfully, by the exercise of its arbitrary will, turn innocence into *prima facie* guilt. It has just as much right to declare that the possession of a gun shall be *prima facie* evidence of an intent to kill.

The court declares that *Mugler v. Kansas,* 123 U. S., 623, is a plain authority that the act under consideration does not violate the 14th Amendment to the Federal Constitution. With the utmost respect for the opinion of my brethren, I am constrained to say that the case has no bearing whatever on the question at issue in this appeal. In *Mugler v. Kansas* it is decided: 1. That the State of Kansas had the right to prohibit the manufacture and sale of intoxicating liquors within the State. 2. That Mugler could not recover the

value of his brewery.    3. That in prosecutions under the
Kansas act it is not necessary for the State to affirmatively
prove that the defendant did not have a permit to sell intoxi-
cating liquors.    I do not controvert anything decided in that
case.    The third proposition has always been the law in North
Carolina in indictments for selling intoxicating liquors with-
out license.    The possession of the license is a matter of de-
fense.    The utter lack of pertinency of the *Mugler case* to
the one at bar can be seen from the following quotation: "It
is only a declaration that when the State has proven that the
place is kept for the manufacture of intoxicating liquors
(such manufacture or sale being unlawful except for specified
purposes and then only under a permit) the prosecution need
not prove a negative, viz., that the defendant has not the
required license.    If the defendant has such permit he can
easily produce it and thus overthrow the *prima facie* case es-
tablished by the State."    How very different is the act we are
considering.    Under it, the State can prove the possession
of three pints of wine in a citizen's private dining room, who
is not engaged in any business connected with intoxicating
liquors, rest its prosecution upon the *prima facie* case thus
made out under the statute, whereby a lawful and innocent
act is arbitrarily converted into evidence of a criminal intent.
If the jury should from prejudice or fanaticism refuse to be-
lieve the defendant's explanation, he is helpless.    Why?    Be-
cause the statute has robbed him of the greatest protection
the citizen has against unwarranted prosecution, viz., the pre-
sumption of innocence thrown around him by the funda-
mental law.    The court would have done well to quote some
of the forcible utterances of *Judge Harlan* in the *Mugler
case.*    He says: "It does not at all follow that every statute
enacted ostensibly for the promotion of these ends is to be ac-
cepted as a legitimate exertion of the police powers of the
State.    There are, of necessity, limits beyond which legisla-
tion cannot rightfully go;" and again, "Undoubtedly, the

State, when providing by legislation for the protection of the public health, the public morals or the public safety, is subject to the paramount authority of the Constitution of the United States and may not violate rights secured or guaranteed by that instrument."

In conclusion I will say that I sympathize deeply with all legislative efforts to extirpate illicit traffic in intoxicating liquors, and will be found sustaining all such laws when within the legislative power. But I cannot conscientiously assist in laying the judicial axe to the most valuable and sacred of all the fundamental rights of civil liberty, viz., the legal right to be adjudged by the court innocent unless the State has offered evidence tending to prove the commission of a crime. The citizens of Union County are as much entitled to the protection of this organic law, in the prosecution of any and all offenses, as are the other citizens of the State, and, when it is denied to them as it is by this statute, they are denied the equal protection of the "law of the land," and are at the mercy of capricious and uncertain jurors.

For the reasons I have attempted to give, I think there should be a new trial, and the court below directed to submit the case to the jury upon the evidence without reference to any *prima facie* case under the statute.