No error.

STATE v. OSCAR WATKINS.

(Filed 22 October, 1913.).

1. Indictment—Spirituous Liquors—Persons to Jurors Unknown—. Actual Sale—Trial—Evidence.

To convict under an indictment of sale of intoxicating liquors "to some person to the jurors unknown," it is as necessary to offer evidence of an actual sale to the unknown person as if his name had been inserted in the indictment.

2. Same—Identification of Defendant—Verdict, Directing.

On a trial upon indictment for the unlawful sale of spirituous liquor alleged to have been made prior to the operative effect of chapter 44, Laws 1913, there was evidence only that a barrel, marked to defendant's address, was found at his railroad shipping point, containing 30 gallons of whiskey; that the barrel was receipted for and was delivered to some person by the railroad agent, but the signature to the receipt was not identified as the handwriting of the defendant, and the defendant was not identified as the one who received the barrel. The rule of evidence that the possession of more than one quart of whiskey shall be *prima facie* evidence of sale not applying to the county wherein the sale is alleged to have been made, it is *Held*, the court should have instructed the jury, upon the evidence, to return a verdict of not guilty.

CLARK, C. J., dissenting; ALLEN, J., concurring in dissenting opinion.

APPEAL by defendant from *Ferguson, J.,* at February Term, 1913, of COLUMBUS.

Indictment for the sale of liquor to persons whose names are to the jurors unkown.

At the conclusion of the evidence, the defendant requested the court to instruct the jury to return a verdict of not guilty. Refused. Defendant excepted. Verdict of guilty. From the judgment rendered, defendant appealed.

*Attorney-General and Assistant Attorney-General for the State.*

• *Schulken, Toon & Schulken for defendant.*

BROWN, J. The following is all the evidence introduced on the trial of this case:

G. W. Rushing, witness for the State, testified: "I saw one barrel in the railroad depot at Hallsboro, marked O. Watkins. This barrel had whiskey marked on it. The barrel looked like it would hold about 30 gallons. I do not know what was in the barrel."

H. O. Harvel, witness for the State, testified as follows: "I am agent for the Atlantic Coast Line Railroad Company at Hallsboro, N. C. On 5 August, 1912, a barrel containing about 30 gallons, marked 'O. Watkins,' and also marked on the barrel 'Whiskey,' was put off the train at Hallsboro, N. C. Some time after the arrival of this barrel, and while I was agent, some one came to the railroad office and receipted for this barrel. I do not know whether Oscar Watkins carried the barrel away or not. I do not know who got the barrel. I only know that some one receipted for it in the name of Oscar Watkins. I do not know where the defendant lives. I did not know Oscar Watkins at the time the barrel was receipted for."

C. L. Benton, witness for the State, testified as follows: "I saw a barrel of whiskey, containing about 30 gallons, in the railroad warehouse at Chadbourn, N. C., marked 'O. Watkins.' When I saw the barrel of whiskey in the warehouse it was in bad order and the whiskey was leaking out. I saw some parties catching the whiskey as it was leaking out of the barrel, drinking it, and others catching it in buckets and carrying it away. The defendant Watkins was not there when I saw it. I do not know what became of the barrel of whiskey. Oscar Watkins lives at Pine Log, about 5 miles from Chadbourn and about 8 miles from Hallsboro."

It is to be observed that the defendant is indicted for selling whiskey to some person to the jurors unknown. While this form of indictment is recognized, yet it is as much incumbent

on the State to offer evidence tending to prove an actual sale to the unknown person as if his name had been inserted in the indictment. *S. v. Dowdy,* 145 N. C., 432; *S. v. Dunn,* 158 N. C., 654; *S. v. McIntyre,* 139 N. C., 599.

There is no evidence that the defendant in this bill ever received the whiskey, much less sold it. The evidence wholly fails to identify this Oscar Watkins with the person who received the whiskey.

The receipted book was not put in evidence, and there was no attempt to prove the defendant's handwriting, as well as no attempt to prove that he ever sold any of it.

This case seems to have been tried as if the act of 1913, ch. 44, had been in effect. That act creates two new offenses in respect to intoxicating liquors as well as a new rule of evidence contained in section 5; but that act went into effect on 1 April, 1913.

This bill was returned in November, 1912, and the trial took place and judgment was pronounced in February, 1913. Therefore, the act of 1913 can have no bearing upon this case, and it must be determined under the law in force prior to that act.

Nor does the act considered by us in *S. v. Barrett,* 138 N. C., 630, apply. This statute declared that the possession of more than one quart of whiskey should be *prima facie* evidence that the party in whose possession it was found had it for the purpose of sale.

The act applied only to Union County, and there was no such special act in force in Columbus County when this offense is alleged to have been committed. His Honor erred in refusing the instruction.

New trial.

CLARK, C. J., dissenting: There was ample evidence to go to the jury tending to show possession of the barrel of whiskey by the defendant. The agent of the railroad testified that on 5 August, 1912, a barrel of whiskey containing about 30 gallons, marked "Whiskey" and addressed to O. Watkins, was put off the train at Hallsboro; that soon after, some one came to the

railroad office, signed the receipt for this barrel, in the name of Oscar Watkins, and carried it off. Another witness testified that he saw a barrel of whiskey containing about 30 gallons in the railroad warehouse at Chadbourn, N. C., marked O. Watkins. It is also in evidence that the defendant Oscar Watkins lived about 5 miles from Chadbourn and about 8 miles from Hallsboro. There is no evidence that any other Oscar Watkins lived in that section. Nor is there any evidence tending to show that the man who got the barrel of whiskey at Hallsboro was not the consignee, nor that his signature on the books of the company receipting for the same was a forgery.

Unless such signature was a forgery, and unless the party who committed the forgery and received the whiskey was guilty also of larceny, then there was evidence to go to the jury that the defendant was in possession of 30 gallons of whiskey, and possibly of 60 gallons, for there was one barrel consigned to him at Hallsboro and another at Chadbourn. This evidence was more than a scintilla.

There is no presumption of law that any one committed two felonies, larceny and forgery. The entry was made in due course of business. Receipting for the whiskey on the railroad books in the name of Oscar Watkins and taking it away, in the absence of any evidence to the contrary, was certainly sufficient to go to the jury on the question of possession. This was all the evidence that the State can reasonably be called on to trace the whiskey to his possession. It was easy for the defendant to negative this fact if he did not receive the whiskey; and he would have done so, if he could. There is no evidence to show that there was another O. Watkins in that section. The evidence was sufficient to satisfy the jury, and did satisfy them, that the defendant was the party who got the whiskey. It was addressed to him and receipted for in his name.

His Honor correctly charged the jury: "The possession of one barrel of whiskey shipped to the defendant at one depot, if you find that it was shipped to him and receipted for by him, and the shipping of another barrel to him at another date, if you so find, are circumstances tending to show that the defend-

ant sold whiskey as charged; but that is for you to say." In *S. v. Barrett,* 138 N. C., 630, which was an indictment under the Union County statute which made the possession of more than 1 quart of whiskey *prima facie* evidence of an intent to sell, *Walker, J.,* says in his concurring opinion that, independent of the statute (the defendant having in possession two 5-gallon kegs, a half-gallon jug, and 1 pint bottle), "having with him so large a quantity of liquor in packages of different sizes and covered over with a laprobe was sufficient of itself to constitute *prima facie* evidence of the defendant's guilty possession . . . The mere fact that reference was made to the statute did not prejudice the defendant when his possession under the circumstances, clearly shown by the evidence, and not disputed, was sufficient to carry the case to the jury."

In this case there was ample evidence to satisfy a jury that the defendant was in the possession of 30 gallons receipted for and carried away in his name; and if the possession in the *Barrett case* of 10¾ gallons was sufficient to carry the case to the jury, certainly there was more than sufficient in this case.

In *S. v. Barrett, Brown, J.,* in his dissenting opinion, says: "Irrespective of the provisions of the act, I am of opinion that there was sufficient evidence to be submitted to the jury that the defendant did have in his possession liquor with the intent to sell it." Under our decisions, proof of possession supports the charge of selling as effectively as it does the charge of having possession with the intent to sell. *S. v. Dunn,* 158 N. C., 654.

There was evidence to satisfy the jury that this defendant was receiving whiskey in large quantities, a barrel at a time, and in the absence of any evidence tending to show the character of the possession of so much whiskey, the jury was warranted in finding, as they did, that the defendant was engaged in selling whiskey to persons unknown, as charged in the bill of indictment. *Hoke, J.,* in *S. v. Dowdy,* 145 N. C., 432; *S. v. McIntyre,* 139 N. C., 399. For what other purpose, if unexplained, did he have it?

The court carefully and correctly charged the jury that they "must be satisfied beyond a reasonable doubt that the defendant

sold liquor to persons unknown; that the possession of the whiskey, if the jury should find that it was shipped to and receipted for by him, are circumstances tending to show that the defendant sold whiskey; but that it was for the jury to say what was the weight to be given to those circumstances."

The jury found the defendant guilty. There being no evidence that there was any other O. Watkins in that neighborhood, and not the slightest evidence tending to show that any one committed forgery or larceny to get possession of the whiskey, nor that the railroad company would have delivered the barrel without the identification of the consignee, could the jury find otherwise than that the defendant obtained possession of the whiskey? Under the authority of the concurring opinion of *Walker, J.,* and the dissenting opinion of *Brown, J.,* in *S. v. Barrett, supra,* the possession of one barrel was the possession of three times as much as was necessary to constitute sufficient possession to submit the question of having the liquor to sell. If the defendant received both barrels, which he did not deny by any evidence, then the case was six times as strong against the defendant as in *Barrett's case.*

The public policy of a State is declared by the Legislature, which is the lawmaking body. The policy of this State in regard to suppressing the traffic in intoxicating liquor was clearly declared by the Legislature of 1907 and ratified on a *Referendum* in 1908 by an overwhelming majority at the ballot box. The province of the courts is to construe the law in accordance with the intent with which it was enacted. Whenever the courts in this State have found a defect that would interfere with the enforcement of this law, the Legislature has promptly corrected it. And the public intent to do this has been declared in the most explicit way, in the "Search and Seizure" law of 1913, ch. 44, whose title is "To secure the enforcement of the laws against the sale and manufacture of intoxicating liquor."

It is doubtful if a jury could be impaneled in this State who would not find upon this uncontradicted evidence that the defendant received this whiskey, and that the presumption which,

under the opinions in *S. v. Barrett* above cited, was raised from the possession of this quantity of liquor, was not rebutted. Indeed, there was no evidence whatever tending to rebut either the possession of the whiskey by the defendant or that he sold it. Certainly this "jury of the vicinage" had "no reasonable doubt," and the defendant sought to get the court to hold him not guilty as a matter of law and not of fact.

His Honor did not charge, as he might have done, under the authority of the opinions in *S. v. Barrett,* above cited, that the possession of so large a quantity of whiskey raised a presumption that he had the whiskey for sale, nor that the whiskey being consigned to the name of the defendant and receipted for in his name raised a presumption that he received it. The Court merely charged that the jury should consider these as evidence, and unless they were satisfied beyond a reasonable doubt that the defendant sold whiskey, to find him not guilty. The court might well have charged that the delivery of the barrel to the person who receipted for it in the name of the defendant and consignee raised a presumption that such consignee received the whiskey. 16 Cyc., 1072. But he did not do so, and left the evidence on both points to the jury, not as presumptions, but merely as circumstances to be weighed by them.

ALLEN, J., concurs in dissenting opinion.