Voght v. The State.

Filed June 18, 1890.

————◆————

No. 14,419.

VOGHT v. THE STATE.

CRIMINAL LAW.—*Renting Room for Gaming Purposes.*—*Evidence.*—*Statute.* —It shall be sufficient evidence of the fact that a building or room was rented for the purpose of gaming if gaming is actually carried on therein with the knowledge of the owner, or under such circumstances that he has good reason to believe that his room is being so used, and takes no reasonable steps to restrain the occupant from continuing the unlawful use. Section 2079, R. S. 1881. Hence direct evidence to prove that there was a specific agreement or intent on the part of the lessor and his lessee at the time he leased the room that it was to be used for the purpose of gaming, is unnecessary.

SAME.—*Burden of Proof.*—*Statutory Presumption Affecting.*—*Constitutionality of Statute.*—While statutes which undertake to make proof of certain facts absolute or conclusive of guilt are unconstitutional, those which merely declare statutory presumptions affecting the burden of proof, are valid.

SAME.—*Evidence.*—*Competency of.*—Any evidence which tends to prove that gaming is actually carried on in the room, and that the lessor knows, or has good reason to believe that it is being carried on and suffered by his lessee, is competent as tending to prove, or raise a presumption, that the room is rented for the purpose of gaming.

SAME.—Evidence that it was generally reputed that the room was kept as a gambling room, and that the lessee who had been indicted had pleaded guilty to the charge of keeping a room in which gambling was permitted while occupying the lessor's room, was competent as tending to raise an inference that the lessor, who was engaged in business near by, in the same community with the lessee, knew of the facts.

SAME.—*Use by Tenant of Room for Unlawful Purpose.*—*Remedy of Landlord.*— The mere fact that a tenant uses premises for an unlawful purpose does

not, of itself, avoid the lease; but the landlord may apply to a court of equity to restrain the tenant and to avoid or forfeit the lease.

From the Huntington Circuit Court.

*J. B. Kenner* and *J. I. Dille,* for appellant.

*L. T. Michener,* Attorney General, and *J. H. Gillett,* for the State.

MITCHELL, J.—It is provided in section 2079, R. S. 1881, among other things, that whoever being the owner of any building or room, rents the same to be used or occupied for gaming shall be fined, and in section 1815, R. S. 1881, it is declared that " It shall be sufficient evidence that any building or other place was rented for the purpose of gaming, if such gaming was actually carried on, and the owner or lessor thereof knew or had good reason to believe that the lessee suffered gaming therein, and such owner or lessor took no sufficient means to prevent or restrain the same."

The appellant, Jacob Voght, was indicted and tried at the October term, 1887, of the Huntington Circuit Court, for having unlawfully rented his building and room to be used for gaming. After hearing the evidence a jury assessed a fine of sixty dollars against him, and from the judgment of conviction rendered upon the verdict this appeal is prosecuted.

There was evidence tending to show that the appellant rented a back room in the second story of a brick building owned by him, situate in the city of Huntington, to a Mr. Parker, ostensibly for a sleeping apartment. The lease was by parol, and was to run two years. The room had been used for gaming before Parker leased it, and the appellant had been indicted for permitting it to be so used. Accordingly he charged Parker that no gambling should be allowed by him. Parker occupied the room for three or four months, his occupancy being of an equivocal character, leading to a strong suspicion that the room was being used during that time, by his permission, for a gambling room. At the end

of that time he sublet it to Anderson, who seems to have had no other occupation than that of gambling, for whom, circumstances tend to show, he rented it in the first place. The appellant lived two squares and a half from the room, and was acquainted with Anderson, who paid the rent to the appellant most of the time after he sublet from Parker. The room was furnished with tables, chairs, a sideboard and lounge, but had in it no bed, or other conveniences for a sleeping apartment, and the evidence tends to show that it was used for no other purpose than for gambling for nearly two years before the appellant was indicted. The city marshal, the hotel keeper, and a number of other citizens, testified that it was generally reputed that the room was used for a gambling room. There was direct evidence that it was actually so used. The evidence tends to show that Anderson was twice indicted by the grand jury, at the April term, 1887, and again at the December term, 1887, for keeping a gambling establishment in the appellant's room, and that he pleaded guilty to both indictments, and was fined in each case. The appellant had other tenants in the same and other buildings, owned by him in the city of Huntington, and attended to collecting his rents himself, and mingled with the citizens of the city, so far as appears, like others of his associates. It is true he testified that he did not rent the room to Anderson; that it was specially agreed between Parker and himself that the room should not be used for gambling; that he supposed Parker was his tenant all the time, and that although he received rent from Anderson, he supposed he was paying it for Parker. He also testified that he made some repairs to the room at the request of Anderson, of whose occupancy he had knowledge, but that he did not know what the latter was doing in the room, or what use he was putting it to; that he never inquired, and that he could not recollect of having heard that Anderson was arrested for keeping a gambling house, in his room, or that he had ever heard that he was so engaged.

Voght v. The State.

It is insisted (1) that because the charge in the indictment is that the defendant rented his room to be used for gaming, the evidence tending to show the general reputation of the room, and that the occupant had been convicted of keeping a gambling house therein, or that tended to show that the appellant knew, or had good reason to believe, that his lessee suffered gaming therein, was improperly admitted; and (2) that there is no competent evidence tending to show that the appellant knew, or had reason to believe, that his room was being used for gaming.

It was not necessary to prove by direct evidence that there was a specific agreement, or intent on the part of the appellant and his lessee at the time he leased the room, that it was to be used for the purpose of gaming. It would rarely happen that such evidence could be obtained, and if direct evidence were required, the result would be that no one could ever be convicted of renting a building or room for the immoral and unlawful purpose of setting up a gambling establishment. Accordingly it has been provided in the statute above set out, that it shall be sufficient evidence of the fact that a building or room was rented for the purpose of gaming, if gaming was actually carried on therein with the knowledge of the owner, or under such circumstances that he had good reason to believe that his room was being so used.

In *Morgan* v. *State*, 117 Ind. 569, this statute was held to be a valid constitutional enactment. While we should unhesitatingly declare a statute void which attempted to enact that a person should be convicted of an offence upon proof of facts which might be consistent with innocence, or which attempted to make certain evidence conclusive of guilt (*State* v. *Beswick*, 13 R. I. 211), yet it has often been held that the Legislature, in defining a crime, may also enact that proof of facts which are universally recognized as indicating guilt shall be sufficient *prima facie* evidence of the commission of an offence defined by statute. For example, it is enacted in

section 1817, R. S. 1881, that the failure of a public officer to account for and pay over public money which has come into his hands, shall be *prima facie* evidence of the embezzlement thereof, and other statutes declare what shall be deemed sufficient evidence in cases of rape, seduction, receiving stolen goods, obstructing highways, and the like. *Morgan* v. *State, supra.*

As is in effect said in *Commonwealth* v. *Williams*, 6 Gray, 1, these statutes only prescribe, to a certain extent, what legal effect shall be given to a particular species of evidence, if it stands entirely alone and unexplained. This neither conclusively determines the guilt or innocence of the accused, nor withdraws from the jury the right and duty of passing upon and determining the issue to be tried. The burden of proof rests upon the State to establish the accusation it makes, but the statute declares that in case certain facts tending to establish guilt, and which can not exist consistent with innocence, are proved, a certain force or effect may be attributed to those facts until an explanation is offered by the accused. *State* v. *Hurley*, 54 Maine, 562; *Commonwealth* v. *Thurlow*, 24 Pick. 374.

The constitutionality of statutes declaring that the delivery of intoxicating liquor shall be *prima facie* proof of a sale, and that a sale shall be *prima facie* proof of illegality, has been affirmed. *Commonwealth* v. *Wallace*, 7 Gray, 222; *State* v. *Higgins*, 13 R. I. 330; *State* v. *Mellor*, 13 R. I. 666; *State* v. *Thomas*, 47 Conn. 546; Whart. Crim. Ev., section 715 a.

Statutes which undertake to make proof of certain facts absolute or conclusive of guilt are unconstitutional. Those which merely declare statutory presumptions affecting the burden of proof are valid.

Any evidence, therefore, which tended to prove that gaming was actually carried on in the room, and that the appellant knew, or had good reason to believe, that it was being carried on and suffered by his lessee, was competent as tend-

ing to prove, or raise a presumption, that the room was rented for the purpose of gaming. Whenever it is material to bring home to a party knowledge of a particular fact, it is admissible to show that the fact was generally known and talked about in the neighborhood where the party sought to be charged with knowledge resided, or that it was a matter of common reputation in the business community to which the party belonged. Whart. Crim. Ev., section 254; Adams v. State, 25 Ohio St. 584.

It is wholly immaterial in the present case whether Parker or Anderson, or both of them, are regarded as the lessees of the appellant, as there was ample evidence to justify the inference that both suffered the room to be used for gaming. Indeed, it does not seem from the evidence to have been devoted to any other use from the time Parker first rented it. Evidence that it was generally reputed that the room was kept as a gambling room, that the occupant Anderson was a gambler, and that he had been indicted, and that he pleaded guilty to the charge of keeping a room in which gambling was permitted while occupying appellant's room, was competent as tending to raise an inference that the appellant, an active man, looking after his own business, residing only two squares and a half away, in the community in which Anderson's acts and business were the subjects of comment, knew of the facts. Notwithstanding the appellant testified that he did not know that the room was being put to an unlawful use, the jury were fully justified in believing, from all the facts and circumstances in evidence, that he had good reason to believe that it was being so used.

The court properly admitted all the facts and circumstances in evidence, and left it to the jury to draw such inferences as seemed naturally and necessarily to grow out of the surrounding facts. The jury drew the inference that the appellant either knew, or had good reason to believe, that an unlawful use was being made of his property by his lessee, and that he took no means to restrain his tenant. They were,

therefore, justified in drawing the further inference that the room had been rented for use as a gambling room. The owner of property who is in a situation to know the use to which it is being applied can not shut his eyes, or close his ears, and remain ignorant for nearly two years of what has become notorious among his neighbors, without some explanation of his want of information. *Graeter* v. *State*, 105 Ind. 271 ; *Pierce* v. *State*, 109 Ind. 535.

Having knowledge that gambling is actually being carried on in his building, our law attributes to such knowledge the same effect as if the building had been rented for the purpose for which it is thus being used, unless the landlord takes reasonable steps to restrain the occupant from continuing the unlawful use.

The mere fact that a tenant uses premises for an unlawful purpose does not, of itself, avoid the lease ; but the landlord may apply to a court of equity to restrain the tenant, and to avoid or forfeit the lease. Wood Landlord and Tenant, section 81 ; Gear Landlord and Tenant, section 98.

What has been said disposes of all the questions discussed, and leads to the conclusion that the instructions and rulings of the court were correct.

The judgment is affirmed, with costs.

Filed May 29, 1890 ; petition for a rehearing overruled June 18, 1890.