FRANK F. SOMMERS v. WESLEY A. REYNOLDS AND
HENRY A. W. BLACKBURN, TRUSTEES, ETC.

| 103 | 307 |
| 116 | 130 |

*Voluntary associations—Dissolution—Rights of members to club
property—Landlord and tenant—Forfeiture of lease.*

1. The members of a voluntary association have the right to the
use of its property, according to and for the purposes of the
association as shown by its articles, as long as any of the
members remain; citing *Wilson v. Livingstone*, 99 Mich. 594.

2. Upon the dissolution of a voluntary association, a lease of a
hall held by the society belongs to its members.

3. After the dissolution, the members of the society in good stand-
ing organized a club, with the intent and purpose of taking
the lease, and using and subletting the leased premises, and
using the revenue thus obtained, through one of their num-
ber, who acted as treasurer, to pay the rent. And it is held
that they did not, by such concert of action, lose their joint
property in the lease.

4. The lease provided that the hall should be occupied for holding
lodge meetings and socials, and that the lessee should not re-
lease or assign the lease, or sublet the leased premises, except
for society purposes, without written consent, and contained
the usual clause providing for re-entry in case of default in
payment of rent or in any of the covenants of the lease.
After the formation of the club, the hall was rented to various
societies, which occupied it five evenings in the week for
lodge meetings, socials, concerts, and dances, and, in addition,
a dance was once held in the hall by four members of the
club. And, in summary proceedings by the lessor against the
lessee to recover possession of the hall, it is held that a for-
feiture under the covenants can only be claimed when the
hall is sublet (not used) for other than society purposes; that
the only use to which it is shown to have been put, that can
be said not to fall within that term, was that of the dance
held by the four members of the club; that, if that should be
technically so held, there is nothing to indicate a subletting
for that purpose, but a mere user by those having charge and
control of the premises, and who were part owners of the term.

Error to Wayne. (Carpenter, J.) Argued October 31,
1894. Decided December 22, 1894.

Summary proceedings to recover the possession of a hall. Complainant brings error. Affirmed. The facts are stated in the opinion.

*Edwin F. Conely* and *Orla B. Taylor,* for appellant.

*George C. Green* (*E. F. Bacon,* of counsel), for defendants.

HOOKER, J. The complainant is the owner in fee of premises known as "Sylvester Hall." On May 23, 1890, he executed a lease of the same to "W. A. Reynolds and H. A. W. Blackburn, trustees of the Royal Adelphia, Godfrey Conclave No. 131, parties of the second part." The foregoing is the only illusion to the Godfrey Conclave, or to a trust, that can be found in the lease. This lease was for the term of five years, "on the terms and conditions hereinafter mentioned, to be occupied for holding lodge meetings and socials." It contained a provision that the said parties of the second part should not re-lease or assign the lease, or sublet said premises, except for society purposes, without written consent, and also contained the usual clause providing for re-entry in case of default in payment of rent or in any of the covenants of the lease.

Defendants' brief asserts that the Royal Adelphia was a charitable society, having an existence as a voluntary association, of which Godfrey Conclave 131 was a branch. Nothing indicates that this was not so, and, as the statement appears to be unquestioned, we shall assume that this is true. The testimony shows that the lease was taken by the defendants under an appointment by Royal Adelphia, Godfrey Conclave No. 131, as trustees to rent a hall, and that it was occupied by the Godfrey Conclave for about a year, when the Royal Adelphia ceased to exist. The members of this conclave had anticipated the collapse of the Royal Adelphia, and for a time had withheld the assessments

paid by its members from the Royal Adelphia, keeping the fund itself.

After the collapse of the Royal Adelphia, some members of the society were in favor of keeping up the conclave. Many failed to pay their assessments, however, and some witnesses testify that this Godfrey Conclave No. 131 went out of existence towards the last of the year 1890. Blackburn resigned as trustee in October, 1890, but attended a meeting in February, 1891, of the members, when they talked of keeping the society up among themselves. Finally, 12 of the members in good standing of Godfrey Conclave No. 131 undertook to get something out of the lease. In the language of one witness, they "organized a club called the 'Godfrey Conclave' when the Royal Adelphia went out of existence, with the intent and purpose of taking the lease." Just what was done in the nature of effecting a new organization does not appear. Suffice it to say that 12 former members of Godfrey Conclave proceeded to use and sublet the hall. The revenue thus obtained was used to pay the rent, one of their members acting as treasurer. This condition of affairs came to the knowledge of the complainant late in December, 1891, and on the 31st of that month he served a written notice to quit upon the defendants, "for the reason that the terms and conditions of the lease of said premises had not been fulfilled," and "because said premises had been sublet for other than society purposes without his written consent." A few days later he accepted rent for the month of January, 1892, and February 2 commenced these proceedings. The court directed a verdict for the defendants, and that is the error complained of.

Complainant bases his right to a reversal upon two grounds:

1. That the alleged dissolution of Godfrey Conclave No.

131 terminated the lease, inasmuch as it did not, and under the terms of the lease could not, assign it.

2. That the lease was forfeited by reason of the premises having been sublet for other than society purposes without complainant's written consent.

If it be conceded that the lease was the property of Godfrey Conclave No. 131, what was necessary to divest the title? That society was a voluntary association. What its articles of association were we have no means of knowing; its objects are not shown; but that it procured a hall for its meetings is plain. As long as it existed, it certainly had a title to its lease, and this lease was undoubtedly subject to the payment of any debts that it might have, and these could not be cut off by disintegration or voluntary dissolution of the society. There can be no doubt that the members of a voluntary society have the right to the use of the property, according to and for the purposes of the society as shown by its articles, as long as any members remain. See *Wilson v. Livingstone*, 99 Mich. 594. Can it be said that they lose their property upon a voluntary dissolution? May they not sell it or divide it? Shall we say, because when a member dies, or abandons the society, his interest lapses in favor of his associates, that, when the remaining members voluntarily disband, the property reverts to its former owner? The contention here is that when this Godfrey Conclave No. 131 went out of existence it abandoned this lease. Again, it is said the Godfrey Conclave then formed was a distinct organization or person, having no rights to the lease, by assignment or otherwise. We think this cannot be sustained. If it be true that Godfrey Conclave No. 131 still exists, it still has a right to its lease, if it ever had any. If it does not exist, the lease belongs to its members, unless we are to admit the very technical theory that they cannot take it because the conclave was a different entity, and could not

transfer or transmit the estate to its constituent parts because the lease did not run to the society, its successors and assigns,—a theory which has no force, for the reason that the title was always in the members, who held jointly, but upon the conditions of their articles. If, at the dissolution of Godfrey Conclave 131, the lease became the property, jointly, of the remaining members, we think they did not lose it by concert of action in using it, although they found it convenient to call themselves by the name of "Godfrey Club." We have no doubt that persons who are associated under the name of "Godfrey Club" have rights in this property if the original conclave had such rights, which we need not discuss, for the proceeding is based upon that theory.

It remains to inquire whether the lease has been forfeited, or rather whether there was evidence entitling the complainant to go to the jury upon that claim. It appears that the hall was let to various societies, among them the United Friends, the Iron Hall, the Aegis, the Rechabites, and others. It was occupied by these societies five nights in the week, and it was used by these different lodges or societies for socials, concerts, and dances. In addition to these, a dance was once held by four of the members of the Godfrey Conclave. It does not appear that they paid for this privilege, or that the hall was sublet to them for the purpose. They simply had the dance. No reason seems apparent for giving to this lease an unduly technical construction, and we do not feel clear that the "society purposes" mentioned therein might not properly be held to include social dances. But if it is to be limited by the fact that the hall was rented by a society, to be occupied for lodge meetings and socials, still a forfeiture under the covenants can only be claimed when it is *sublet* (not used) for something other than society purposes. In our opinion, the only use to which this hall is shown to have been put,

that can be said not to fall within the term "society purposes," was that of the dance held by the four members of Godfrey Conclave; and, if that should be technically so held, there is nothing to indicate a subletting for the purpose, but a mere user by those having charge and control of the premises, and part owners of the term. There is no provision in the lease for a forfeiture in case of a misuser by the lessee; it is only in case of a prohibited subletting.

The judgment of the circuit court meets our approval, and it will be affirmed.

The other Justices concurred.