## STODDARD v. GALLAGHER.

LANDLORD AND TENANT — PERMITTING PREMISES TO BECOME VACANT—BREACH OF COVENANT—ESTOPPEL TO CLAIM.

In May, 1898, the owner of a summer hotel leased it for a term ending October 1, 1903. The lease stipulated that, if the premises should become vacant, the lessor might re-enter and relet, applying the rental on the lessee's obligation. It was the lessee's practice at the end of the summer season to fasten the doors and windows, and leave his furniture; the hotel

remaining unoccupied until the 1st of the ensuing June. The installments of rent were payable January 1st of each year, and in December, 1900, the lessor requested payment for the ensuing season, which was made. In April, 1901, the lessor sold the premises; the purchaser assuming the risk and expense of getting possession. Negotiations for a surrender of the lease having failed, the purchaser entered the premises; and, in ejectment by the lessee against the purchaser and the lessor, defendants relied on a breach of the covenant for continued occupancy. *Held,* that they were estopped to claim such breach.

Error to Mackinac; Shepherd, J. Submitted May 13, 1903. (Docket No. 62.) Decided May 29, 1903.

Ejectment by Henry S. Stoddard and Sadie E. Stoddard against Belle Gallagher and Charles J. Louisignau. From a judgment for plaintiffs on verdict directed by the court, defendants bring error. Affirmed.

*J. J. Brown* (*Henry Hoffman,* of counsel), for appellants.

*C. J. Pailthorp,* for appellees.

MOORE, J. The plaintiffs are residents of Chicago. The defendant Louisignau was the owner of a hotel on Mackinac Island, which was opened only during the summer season. In May, 1898, he leased the premises and the furniture therein to the plaintiffs for five years, the term to commence June 1, 1898, and to end October, 1903, at a rental for the term of $1,250, to be paid after the first year,—$250 January 1st each year for the following season. In the written lease was the following condition:

"And also that if the said premises, or any part thereof, shall become vacant during the said term, the said party of the first part, or his representatives, may re-enter the same, either by force or otherwise, without being liable to any prosecution therefor, and relet the said premises as the agent of the said parties of the second part, and receive the rent thereof, applying the same first to the payment of such expenses as he may be put to in re-entering, and then

to the payment of the rent due by these presents, and the balance (if any) to be paid over to the said parties of the second part, who shall remain liable for any deficiency."

Shortly after the lease was made, the plaintiffs took possession of the premises, added furniture of their own to what was already there, paid their rent regularly, and kept the hotel as a tourists' hotel for the seasons of 1898, 1899, and 1900. It was their practice at the end of the season, in September or early October, to fasten the doors and windows of the hotel, leaving their furniture there, and reopen the hotel about the 1st of June. In December, 1900, Mr. Louisignau wrote Mr. Stoddard, saying the rent was due, and that he needed the money to pay his taxes, and asked Mr. Stoddard to send the money by registered letter or express. December 19th Mr. Stoddard transmitted the rent by express, and Mr. Louisignau gave to the express company a written receipt for the $250 as rent for the season of 1901. This receipt was delivered to Mr. Stoddard by the express company. March 22, 1901, Mr. Louisignau wrote Mr. Stoddard, saying he had a chance to sell the premises, and saying, "Of course I will return the $250 you paid for the coming season." Three days later Mr. Stoddard replied to this letter, saying plaintiffs had spent so much money on the house during the three years they had it, they thought the next two years would help them out, and offered to surrender the lease, with the furniture, for $1,000 and a return of the $250 rent paid in advance. April 25, 1901, Mr. Louisignau sold the premises on land contract to Mrs. Gallagher, who was and had been for some years a keeper of a boarding house not far from the premises in question. In the contract was the following provision:

"It is understood that above premises are under a lease to Henry S. Stoddard and Sadie E. Stoddard for five years from June 1, 1898, and second party herein assumes all risk and expenses in getting possession of said premises."

On the 2d of May, 1901, Mr. Louisignau wrote Mr. Stoddard, among other things, as follows:

"The party that has bought the house is Mrs. Belle Gallagher, at the Island. The thousand dollars you ask besides the rent you can't have, as you aint entitled to it. Mrs. Gallagher will write'you for the keys."

About the same time Mr. Louisignau sent Mr. Stoddard a draft for $250, which was at once returned to him by Mr. Stoddard, and was retained by him. May 10, 1901, Mrs. Gallagher wrote Mr. Stoddard a letter, stating, among other things:

"I have purchased the Brunswick, and, finding the doors and windows open, I took possession, as we were neither of us safe with the house in this condition. Now, I wish to make you a proposition: If you will leave the furniture you now have in the hotel for this season and next, I will board your wife and daughter from July 15th to September 5th this year and next."

This offer was not accepted, and shortly after Mrs. Gallagher sent the furniture belonging to the plaintiffs to them, in Chicago. Soon after this the plaintiffs found Mrs. Gallagher in possession of the premises, made a demand upon her for them, and, upon her refusal to give possession, this suit was brought.

Upon the trial Mrs. Gallagher claimed she found the premises vacant, and, under the terms of the lease, had a right to take possession. She sought to introduce testimony that the house leaked and the sills were rotted, for the purpose of showing plaintiffs had abandoned the property. This testimony was at first excluded, but was afterwards admitted. It is urged here, and was urged in the court below, that plaintiffs had allowed the property to become vacant, within the terms of the lease, thereby working a forfeiture.

One cannot read this record without reaching the conclusion that this claim is a pretext on the part of Mrs. Gallagher to avoid the consequences of her illegal acts. The hotel was, and for years had been, a tourists' hotel. The season for keeping it open was a short one. Though the lease was for five years, the time when it was to com-

mence and end shows the parties understood it was for
five seasons.    At the close of the season the windows and
doors were fastened up.    The defendants knew this, and
one of them, at least, and probably both of them, knew
the plaintiffs lived in Chicago, except when the hotel was
open for guests.    After the third season, with full knowl-
edge of these facts, a request was made of Mr. Stoddard
to pay the rent for the season of 1901, according to the
terms of the lease.    This request was honored, and a
receipt sent.    When the two defendants entered into nego-
tiations, one for the sale and the other for the purchase of
the property, they both had knowledge of the plaintiffs'
interest in the property by virtue of their lease, and we
think the court was entirely right in saying the defendants
are estopped from saying the house was vacant and the
lease forfeited.

Judgment is affirmed.

The other Justices concurred.