PICKALO *v.* MACK.

1. LANDLORD AND TENANT—FORFEITURE OF LEASE—ILLEGAL USE OF PREMISES.

In view of the common-law rule that a lessee does not forfeit his lease by using the demised premises for an illegal business unless in breach of an express covenant in the lease coupled with a forfeiture clause, and the provisions of the statute (3 Comp. Laws 1915, § 11691) that "no covenant shall be implied in any conveyance of real estate, whether such conveyance contain special covenants or not," the forfeiture of a lease, *held*, not authorized by the use of the leased premises for the illegal sale of liquor, where the forfeiture was not provided for in the lease.

2. SAME—LEASE—CONVEYANCE.

A lease for a term of years for a valuable and continuing consideration is a conveyance.

3. SAME—LESSOR'S REMEDY FOR ILLEGAL USE OF PREMISES—STATUTES.

Lessor's remedy for the unlawful use of leased premises for the illegal sale of intoxicating liquor, in the absence

------

As to whether leases are within the statute declaring that there shall be no implied covenants in conveyances of real property, see note in 44 L. R. A. (N. S.) 1110.

of a clause in the lease providing for forfeiture, is in the criminal court, or in the chancery court by injunction proceedings to suppress said illegal business as an abatable nuisance under section 2 of Act No. 112, Pub. Acts 1919, authorizing prosecuting officers "or any citizen of the county" to maintain suit to perpetually enjoin said nuisance.

4. SAME—FORFEITURE OF LEASE—STATUTES.

Nor is 2 Comp. Laws 1915, § 7050, authorizing and regulating the liquor business and providing that any sale or gift of intoxicating liquor by a lessee or occupant of leased premises, resulting in damages, should, at the option of the lessor, work a forfeiture of the lease, authority for the forfeiture of a lease for the illegal sale of liquor under the present law (Act No. 338, Pub. Acts 1917, with amendments, and the constitutional amendment, prohibiting the liquor traffic), which superseded the former law.

Error to Wayne; Mandell (Henry A.), J. Submitted October 7, 1921. (Docket No. 61.) Decided February 8, 1922.

Summary proceedings by Steve Pickalo and another against Tony Mack for the possession of leased premises. There was judgment for plaintiffs before the commissioner, and defendant appealed to the circuit court. Judgment for plaintiffs. Defendant brings error. Reversed, and no new trial ordered.

*Cass J. Jankowski* and *Edward Daskam* (*D. G. F. Warner,* of counsel), for appellant.

*Walter M. Nelson,* for appellees.

STEERE, J. Plaintiffs are owners of premises located on Dequindre street, in the village of Hamtramck, Wayne county, and on May 21, 1918, leased the major portion thereof for 5 years to defendant, Tony Mack. The part of the property leased is described as follows:

"Two stores on the ground floor and two living rooms adjoining and one front bed room up stairs, sufficient space in garage adjoining for one automobile and space for fuel in said garage, and also one hen house located on the premises, and also use of basement in the building located at No. 769 Dequindre street, and also the use of yard in rear of the said building, for the term of five years from and after the first day of June, 1918, on the terms and conditions hereinafter mentioned, to be occupied for business purposes and also for residence."

The portion reserved by plaintiffs for themselves consisted of apartments upstairs where they were then living, with their four children, and general use of the premises except as leased to defendant. The lease is a standard form with customary provisions, the only one as to use of the property being, as above quoted, *"for business purposes and also for residence."* Defendant took possession of the property under his lease, established his residence in the upper story and opened a grocery and meat market on the first floor. Some time thereafter he put in and ran a soft-drink place and later, as claimed by plaintiffs, engaged in unlawfully selling intoxicating liquors to an extent which attracted an objectionable and lawless class to the place, resulting in disorderly conduct and disturbances on the premises which became unendurable. After repeated protests to him and unavailing appeals to the police of Hamtramck, as they claim, plaintiffs on May 25, 1920, served notice on defendant in part as follows:

"That because of your violations of the law in the occupancy and the use of the  *  *  *  premises at 769 Dequindre street, occupied by you  *  *  *  we hereby elect to declare and do declare said lease forfeited. Unless you remove from said premises within one week from the date of this letter, it will be necessary for us to take appropriate action against you."

No attention being paid to this notice by defendant nor change in his unlawful practices, as plaintiffs claim, they declared his lease forfeited, and on June 5, 1920, commenced summary proceedings before a circuit court commissioner to regain possession of the premises. Plaintiffs had judgment in their favor before the commissioner and the case was appealed to the circuit court of Wayne county where a jury trial was had and a verdict rendered in favor of plaintiffs, with judgment thereon.

Upon trial in the circuit, plaintiffs introduced testimony showing that for some time before these proceedings were instituted defendant had increasingly sold intoxicating liquor in his place of business, which was brought to a garage back of the building in an automobile, and from there carried by the back way into the building in bags, boxes and otherwise, some of it to defendant's bedroom upstairs; that customers freely bought liquor at his bar and drank on the premises to intoxication, at times indulging in riotous conduct and profanity in the hearing of their children and others in that vicinity, to an extent which disturbed the privacy and quiet of their home, keeping the family awake nights. So far as their proofs are concerned there was an abundance to justify both proper civil and criminal proceedings. Defendant in his pleading and testimony upon the trial made denial of these charges, while his counsel saved by timely objections to plaintiff's testimony, motions and requests for directed verdict, the right to review various legal questions raised.

Without discussing in detail defendant's numerous assignments of error, it can be said that those calling for consideration center to the proposition that plaintiff failed as matter of law to show a right to forfeiture of defendant's lease, or to dispossess him by summary proceedings, in the absence of any express

provision for forfeiture on that ground or any statute on the subject in this State, since the common law does not forfeit a lease because the leased premises are used for an unlawful business or purpose.

Plaintiffs' contention is that the provision of the lease relative to the property being used for business purposes and residence limits its use to lawful business purposes, and defendant having repeatedly violated his contract by conducting an unlawful and criminal business on the premises against their protest they had the right to declare his lease forfeited and summarily proceed to dispossess him. The contracting parties' rights must necessarily be measured by the written instrument between them extending over a term of years. There is no claim of fraud in its inception and it contains no negative covenant in express language by which the lessee binds himself not to sell intoxicating liquor on the premises, nor any express condition providing for forfeiture in case he should, as might have been and often is effectually so provided. The first paragraph of the lease describes in usual form the parties and property, which the first parties let and lease to the second party "for the term of five years from and after the first day of June, 1918, on the terms and conditions hereinafter mentioned, to be occupied for business purposes and also for residence." The second paragraph provides in usual form for re-entry by plaintiffs and removal of defendant "in case any rent shall be due and unpaid or any default shall be made in any of the covenants herein contained." By the third paragraph second party hires the described premises for the term of five years "and does covenant and promise to pay the said parties of the first part, their representatives and assigns, for the rent of said premises for said term the sum of thirty-two hundred and forty dollars," divided into monthly payments, in advance. Pro-

vision is also made for certain repairs and improvements by the first parties to put the premises in "tenable condition," while the second party is given the right to erect a building upon the premises "for smoking meats." No restrictions are put upon his subleasing. He next covenants in the fifth paragraph that he will at his own expense keep the premises in repair and at the expiration of his lease yield them up in as good condition as when taken, reasonable wear and damages by the elements excepted. In the sixth paragraph plaintiffs covenant that defendant shall have peaceable possession and enjoyment of the demised premises for the specified time, on his "paying the aforesaid instalments and performing all the covenants aforesaid."

The trial court left the case to the jury with the instruction that "as a matter of law" the lease was being violated and plaintiffs would have a right to declare the same forfeited "if some illegal business, some unlawful business, in June, 1920, was being conducted in that place under this lease." The jury determined that submitted fact in the affirmative. Apparently the court in so construing the lease implied a covenant by defendant that the premises should only be used for lawful business purposes and applied the re-entry clause to the implied covenant, since no express qualifying language touching the "business purposes" authorized is found anywhere in the lease.

At the inception of these summary proceedings based on a claimed forfeiture we are confronted with the general common-law rule that the lessee does not forfeit his term by using the demised premises for an illegal business, unless in breach of an express covenant in the lease coupled with a forfeiture clause (16 R. C. L. p. 1122), and the provision of our statute (3 Comp. Laws 1915, § 11691):

"No covenant shall be implied in any conveyance

of real estate, whether such conveyance contain special covenants or not."

It cannot be questioned that this lease, by which plaintiffs transferred to defendant a portion of their interest in the real estate it covered during a term of years less than their own for a valuable and continuing consideration, was a conveyance.

Plaintiffs' counsel seeks to hurdle this express statutory provision against implied contracts by implying a qualification and supplying a restrictive adjective to business purposes, and asserting that it means for "lawful business purposes." But beyond the natural supposition that right-minded lessors might be averse to their leased premises being used for any "unlawful business purposes" the language of permissive use is as susceptible to the latter supplied adjective as the former. There are numerous well known kinds of statute-made unlawful business, such as smuggling, hunting and trapping at certain seasons of the year, and engaging in various vocations or lines of traffic without a license, including the manufacture and sale of intoxicating liquors as a beverage, now outlawed by constitutional amendment and enabling legislation.

The contingency of an unlawful use of leased premises is easily guarded against by a plainly expressed restrictive covenant in the lease coupled with a forfeiture, and even if lessors are misled or neglectful in that particular they are not remediless. Both the State and Federal criminal courts are open to well founded complaints against those unlawfully engaged in liquor traffic, now a felony in this State, and with the testimony plaintiffs had available, if found true by a jury as it seems to have been in this case, there was opportunity for them to restrict Tony's criminal activities and effect his compulsory sequestration elsewhere for their own and the public welfare, or they could resort to the chancery court by injunctive

proceedings to suppress his unlawful storing or vend-ing of intoxicants on the premises, not only by well recognized common-law principles of equity jurisdiction (*Voght* v. *State*, 124 Ind. 358 [24 N. E. 680]; *Parkman* v. *Aicardi*, 34 Ala. 393; *O'Connell* v. *Mc-Grath*, 96 Mass. 289; 1 Wood's Landlord & Tenant [2d Ed.], § 81), but under special statutory provisions enacted since adoption of prohibition.    Act No. 112, Pub. Acts 1919, defines both the criminal conduct with which defendant is charged and the place where he carries on such business as an abatable nuisance. Section 2 of the act authorizes prosecuting officers "or any citizen of the county" to maintain proceedings in chancery "to perpetually enjoin said nuisance, the person or persons conducting the same," etc.    And when an injunction is granted it is made binding on the party defendant throughout the judicial circuit in which it was issued.

If an implied covenant were permissible the re-entry clause in this lease is inapplicable to work a forfeiture in summary proceedings.

"Forfeitures are not favored; and where a contract is ambiguous and capable of being so construed as to provide for a forfeiture or as not so to provide, the courts uniformly hold that they will so construe the contract as to avoid the forfeiture."    6 R. C. L. p. 724.

In *Sommers* v. *Reynolds*, 103 Mich. 307, a like printed form of lease was used as in the instant case with the customary re-entry clause in case of default in payment of rent or in any of the covenants of the lease, which ran for a period of five years "on the terms and considerations hereinafter mentioned to be occupied for holding lodge meetings and socials." There was also a covenant against re-leasing, assigning, or sub-letting except for society purposes.    Summary proceedings were instituted upon the ground, amongst others, that the lease was forfeited by reason

of the premises having been sub-let for other than society purposes. Distinguishing between a mis-user and a sub-letting the court said: "There is no provision in the lease for a forfeiture in case of a mis-user; it is only in case of a prohibited sub-letting." Neither is there any provision in this lease for a forfeiture in case of a mis-user for unlawful business purposes or otherwise.

In a belated supplementary brief counsel for plaintiffs now contends that forfeiture for conduct of an unlawful business on leased premises is provided by statute in this State as applied to the sale of intoxicating liquors. In support of this contention we are referred to the concluding sentence of section 20 (2 Comp. Laws 1915, § 7050) of the former liquor traffic law, entitled "An act to provide for the taxation, licensing and regulation of the business of manufacturing, selling, keeping for sale, etc., of spirituous and intoxicating liquors and malt, brewed or fermented liquors and vinous liquors in this State." * * * That lengthy section, which was a fruitful source of litigation when sale of intoxicating liquor as a beverage was lawful, provided for damages resulting from designated illegal sales by those authorized to engage in the business, and concluded:

"Any sale or gift of intoxicating or malt liquor by the lessee or occupant of any premises, resulting in damages, shall, at the option of the lessor work a forfeiture of the lease and the circuit court in chancery may enjoin the sale, giving away or furnishing of any intoxicating or malt liquors, by any lessee or occupant of the premises, which may result in loss or damages or liability to the lessor or any person claiming under such lessor."

The act which contained that section was directed to the authorized business of liquor manufacture and traffic, with provisions regulating the same. It was squarely superseded and negatived in its general in-

tent by the constitutional amendment of 1916, followed by Act No. 338 of the Public Acts of 1917, with amendments, which expressly repeals all acts or parts of acts in conflict with it. When the liquor traffic was lawful, damages contemplated by the excerpt quoted from the law authorizing the business were held to clearly contemplate such injuries to person, means of support, etc., as were the direct result of acts done by persons while intoxicated through forbidden sales made by those authorized to engage in the liquor traffic. It could scarcely be contended that the clause quoted would yet be germane to the object of the act as expressed in its title with the remainder of the act wiped out. As the law now stands there is no express legislation forfeiting a lessee's term for unlawful sale of liquor on the demised premises, as is provided in many jurisdictions, and the lessor's only protection in this State is by proper provisions in his lease, resort to criminal proceedings or application to the equity courts.

The judgment is reversed without a new trial and with costs to defendant, but without prejudice to other appropriate proceedings.

FELLOWS, C. J., and WIEST, STONE, CLARK, BIRD, SHARPE, and MOORE, JJ., concurred.