STRUBLE *v.* COMMUNITY CLUB.

LANDLORD AND TENANT—LEASE—COVENANT AGAINST SUBLETTING—BREACH—NOTICE—ESTOPPEL.

 Where the purchaser of a building leased to a voluntary association as an armory knew that it had been rented to various organizations for public meetings without objection from the lessor, he was in no position to claim that the covenant against subletting was thereby breached.

Error to Gratiot; Moinet (Edward J.), J.   Submitted May 11, 1922.   (Docket No. 78.)   Decided June 5, 1922.

Summary proceedings by Elburtus L. Struble against the Community Club and another for the

possession of leased premises. There was judgment for plaintiff, and defendants appealed to the circuit court. Judgment for defendants on a directed verdict. Plaintiff brings error. Affirmed.

*George P. Stone* and *Charles H. Goggin,* for appellant.

*O. L. Smith* and *O. G. Tuttle,* for appellees.

MOORE, J. This case was commenced before a circuit court commissioner to recover the possession of real estate held by the defendants. The case was appealed to the circuit court. From a directed verdict in favor of the defendants the case is brought into this court by writ of error.

Mary H. Church was the owner of the real estate involved in the controversy. April 12, 1918, she gave a power of attorney to James P. Gibbs to manage her real estate in Gratiot county. December 23, 1918, Mr. Gibbs executed a paper, the material parts of which read:

"It is hereby agreed between Mary H. Church of New York City, by Jas. P. Gibbs, her attorney in fact, party of the first part, and the Home Guards of Ithaca, Michigan, by the following duly authorized committee party of the second part, as follows: The said party of the first part, in consideration of the rents and covenants herein specified, do hereby let or lease to the said party of the second part the following described premises  *   *   *   for the term of 20 months from and after the first day of January, 1919, on the terms and conditions hereinafter mentioned, to be occupied for an armory and in no case to be used for any business deemed extra hazardous on account of fire.  *   *   *

"And the said party of the second part does hereby hire the said premises for the term of 20 months as above mentioned, and does covenant and promise to pay to the said party of the first part, representatives and assigns for rent  *   *   *   with the privi-

lege of renewing this lease for 40 months at the expiration of this lease on the payment of $20 per month for the additional time.

"And the second party will not assign or transfer this lease, or sublet said premises, or any part thereof without the written assent of said party of the first part. * * *

"The covenants, conditions and agreements, made and entered into by the several parties hereto, are declared binding on their respective heirs, representatives and assigns.

> "ITHACA HOME GUARDS by Committee
> "LELAND HELFER            Seal.
> "FLOYD E. BARNES          Seal.
> "ADNA H. BURGRAFF         Seal.
> "MARY H. CHURCH           Seal.
> By JAMES P. GIBBS
>             Her Attorney in fact.
> "H. P. BERMAN."

July 12, 1920, the plaintiff bought by land contract the real estate in question with a provision in his contract reading: "This contract is made subject to a certain lease to the Home Guards."

August 31, 1920, the plaintiff caused a notice to be served on defendant, the material parts of which read:

"To Leland Helfer, The Community Club of Ithaca, Michigan, or any person claiming any rights in the premises hereinafter described under him or them.

"*Gentlemen:* Please to take notice that the lease of the Palace Hall situated on the west end of lots 4 and 6 upper Ithaca, Michigan, executed by Mary H. Church to the Home Guards of Ithaca, Michigan, on December 23, 1918, expires on this date, and I demand that you surrender to me as the owner of said premises full and entire possession of said premises at the expiration of this date."

The defendants did not vacate the premises and this proceeding was brought with the result before indicated. We cannot state the contention of the appellant better than to quote as follows from the brief:

"It is our contention that the important question

in the case is whether under the facts as disclosed by the record the plaintiff was obligated to give a renewal of the lease to the Community Club.   We also contend that the evidence shows such a subletting and for such purposes as constituted a misuse of the premises and worked a violation of the covenants of the lease.   We also contend that conceding all the claims of the defendants regarding a waiver by acceptance of rent, to the full extent of their claims such waiver did not legally estop the plaintiff from refusing to renew the lease.

"If we are right in these contentions then we believe we are entitled to a reversal of this judgment and the judgment in this court in favor of the plaintiff.

"And in any event we claim that the questions of the identity of the Community Club with the Home Guards, the violation of the covenants of the lease, and the waiver of conditions and covenants by the lessor, were questions of facts which should have been submitted to the jury."

Upon the trial Mr. Helfer and Mr. Burgraff were called as witnesses by the plaintiff.   Other witnesses were sworn in behalf of the plaintiff.   No witnesses were called on the part of the defendants.   In addition to the reason stated in the notice of August 31, 1920, from which we have quoted, for asking for the possession of the premises, it was claimed on the trial that defendants had breached the provision that "the second party will not assign or transfer this lease, or sublet said premises or any part thereof, without the written assent of said party of the first part."

The record is somewhat long but there is not much conflict as to what occurred.   The Ithaca Home Guards was a voluntary organization and the lease was made through the action of a committee.   Later the voluntary organization, known as the Ithaca Home Guards, was called the Ithaca Military & Recreation Club, and still later it was called the Community Club.   Through all these changes the club' remained a voluntary organization, with the

same membership except as changes were made by some of the members dropping out and other members being received. The armory building, so called, in addition to being used for the members of the club was rented at from $4 to $10 a night to various organizations, like the Cattle Buyers' organization; the Gleaners; the Farmers' Institute; for dances; to the Knights Templar; to the Eastern Stars; to the Grange; for an automobile show; the plaintiff leased the building one evening; for various public meetings.

We quote some of the testimony of Mr. Gibbs who made the lease on behalf of Mrs. Church:

"I remember when the evangelistic services were held in the building. I heard they were being held there. I heard people talking about it. I was in Ithaca at that time. I didn't pass the building and see the people in there. I know evangelistic services were being held there. I didn't see the people going into the building or coming out. I didn't make any objection to it. I knew a meeting was being held there when Leonard Wood was there. I went along with the other fellows. It was a special meeting. There was a big crowd there. They didn't all get into the building. I guess they could not get in. I don't know when the meeting was held positively. It was the 27th day of March, I think. It was before the presidential primary. I was in the building at that time; a few days after that I went over to get my rent and I didn't object to that usage. It wouldn't have made any difference whether the check had been signed Community Club or Home Guards. Before I made that lease, I made no investigation as to who the members of the Home Guards were. I didn't know all the members. I supposed Leland Helfer was a member. I had seen him drill with the fellows. I supposed Floyd E. Barnes was. I knew that these boys were renting the building for the Home Guards and that they were getting it for that society. I didn't know that they were members of that voluntary association. I didn't make any inquiries as to whether they were members or not. It didn't make any differ-

ence.   It simply was to rent the building.   I didn't know at that time that Harry P. Berman was a member or Adna Burgraff.   I remembered another meeting that was held in the armory the latter part of April when Milo Campbell was there and there was a good crowd and I was in the room and they had a big community dinner there and I ate dinner there. The forepart of May following I collected the rent and at that time I didn't raise any question about the fact that this meeting was held.   It didn't make any difference.   I didn't know whether they had gotten any pay for it or not.   It didn't make any difference to me and if I had known it I don't know as it would have made any difference to me if I had known that the money that I received consisted of this $6 received for rent of the building and the fact that the check was signed by the Community Club didn't make any difference.   I remembered trying to sell this building to some of the business men in town.   I remembered saying upon an occasion when I talked with you that the business men ought to purchase this for a Community Club.

"*Q.* They were trying to get along and put on those things for the benefit of the community?

"*Mr. Goggin:* I object to that as being incompetent, irrelevant and immaterial.

"*The Court:* He may answer.

"*A.* Yes, sir.

"*Witness:* This was before I made any sale to Mr. Struble and was when the Community Club was putting on these things."

The building during all the time was managed by Mr. Helfer acting for the clubs bearing the various names.   He collected in the money received for the use of the building and paid the rent to Mr. Gibbs for Mrs. Church, except for a short time when in the absence of Mr. Gibbs it was paid to the son of Mr. Gibbs.

The rent was paid many times by the giving of checks.   Some of them were signed "Ithaca Military & Recreation Club, Leland Helfer, Chrn. Bld. Com."

218 Mich.—39.

Some of them "Home Guards a/c." "The Community Club, Leland Helfer."

The defendants were not willing to surrender the lease at the end of the 20 months, and tendered the rent. Was the use that was made of the armory an assignment or transfer of the lease, or a subletting within the meaning of the provision contained in the lease?

In 16 R. C. L. p. 870, it is said:

"A covenant against subletting is not violated by placing a caretaker in possession during the tenant's absence. It is clear that, even under a liberal construction of the covenant to constitute a violation of a lease the lessee must have attempted to put in possession of the premises a new tenant, not merely a new occupant. To be a tenant a person must have some estate, be it ever so little, such as that of a tenant at will or on sufferance. A subletting creates a new estate dependent upon or carved out of but distinct from the original leasehold. A person may be in occupation of real property simply as a servant or licensee of his master. In that case the possession is not changed; it is always in the master."

See, also, *Presby* v. *Benjamin,* 57 L. R. A. 317 (169 N. Y. 377, 62 N. E. 430) ; *Leduke* v. *Barnett,* 47 Mich. 158; *Sommers* v. *Reynolds,* 103 Mich. 307.

It is evident from the testimony that everybody cognizant of the facts regarded the use that was made of the armory to be a proper use to make of an armory. The plaintiff knew the use that was made of it. Mr. Gibbs knew the use that was made of it, and made no objections to such use. He received and cashed checks signed "Ithaca Military & Recreation Club, Leland Helfer, Chrn. Bld. Com." "Community Club, Leland Helfer, Secy. & Treas." See *Stoddard* v. *Gallagher,* 133 Mich. 374. The case of *Patterson* v. *Carrel,* 171 Mich. 296, has a collation of the authorities and is directly in point. See, also, *Pearson* v. *Sullivan,* 209 Mich. at pages 312 and 313

(9 A. L. R. 438). If there was a technical breach of the agreement it has been waived.

As to the rights of members of a voluntary association, see 25 R. C. L. p. 57; *Sommers* v. *Reynolds,* 103 Mich. 307; *Schiller Commandery* v. *Jaennichen,* 116 Mich. 129; *Detroit Light Guard Band* v. *Independent Infantry,* 134 Mich. 598; *Walters* v. *Pittsburgh, etc., Iron Co.,* 201 Mich. 379. We think the trial judge properly directed a verdict.

The judgment is affirmed, with costs to the appellees.

FELLOWS, C. J., and WIEST, MCDONALD, CLARK, BIRD, SHARPE, and STEERE, JJ., concurred.