*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

HASTINGS DOG PARK COMPANIONS,

        Plaintiff-Appellant,

v

CITY OF HASTINGS,

        Defendant-Appellee.

UNPUBLISHED
September 3, 2020

No. 348915
Barry Circuit Court
LC No. 2018-000670-CZ

Before: BORRELLO, P.J., and SAWYER and SERVITTO, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order granting summary disposition in favor of defendant. Because summary disposition was premature, we reverse and remand for further proceedings consistent with this opinion.

In May 2011, plaintiff and defendant entered into a Dog Park Agreement whereupon plaintiff, acting as a subcommittee of the Barry County Humane Society, would erect a dog park on property owned by defendant in Hastings, Michigan. The Dog Park Agreement provided an expiration date of May 11, 2016. In July 2016, plaintiff, acting on its own behalf, and defendant entered into a new Dog Park Agreement ("the Agreement"). The Agreement mirrored the May 2011 Dog Park Agreement in all pertinent respects. Relevant to the instant matter, the Agreement provided at paragraph one that the Agreement would be operable for an initial term of five years, with automatic renewal on a yearly basis, "unless either party gives notice to the other at least ninety (90) days prior to the expiration of the Initial Term or Renewable term . . . ." Also of relevance, the Agreement stated at paragraph four that "[u]pon expiration or termination of this Agreement, the Hastings Dog Park Companions at its cost shall promptly repair and restore the area to the reasonable satisfaction of [defendant]."

It is undisputed that on October 17, 2017, defendant sent plaintiff a "Notice of Termination of Dog Park Agreement," advising plaintiff that the Agreement would be terminated effective January 16, 2018. Thereafter, defendant allegedly refused to allow plaintiff to remove the fence surrounding the dog park, a gazebo located in the dog park, and other items plaintiff claims it had installed or kept on the dog park premises owned by defendant. Thus, on August 13, 2018, plaintiff

initiated a lawsuit against defendant seeking a declaratory judgment that plaintiff had the right to remove specified items from defendant's property. Plaintiff's lawsuit also contained claims of unjust enrichment and conversion.

In lieu of answering plaintiff's complaint, defendant moved for summary disposition in its favor pursuant to MCR 2.116(C)(5) and (10). Defendant asserted that plaintiff did not have the capacity to sue because it had disbanded or dissolved. Defendant further asserted that if plaintiff does exist, the written agreement between plaintiff and defendant precludes a claim of unjust enrichment, and that defendant did not commit conversion because the Agreement provided for repair and restoration to defendant's satisfaction and because any donations made from individuals were to the dog park rather than plaintiff. The trial court determined that plaintiff lacked the capacity to sue and granted summary disposition in defendant's favor on all of plaintiff's claims pursuant to MCR 2.116(C)(5). After the trial court denied plaintiff's motion for reconsideration, plaintiff filed the instant appeal.

This Court reviews de novo a trial court's ruling on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Summary disposition is appropriate under MCR 2.116(C)(5) where "[t]he party asserting the claim lacks the legal capacity to sue." When reviewing a ruling on a motion under MCR 2.116(C)(5), we consider the pleadings, depositions, admissions, affidavits, and other documentary evidence submitted by the parties. *Wortelboer v Benzie Co*, 212 Mich App 208, 213; 537 NW2d 603 (1995). The legal capacity to sue and be sued is a legal doctrine, and is thus decided as a question of law and reviewed de novo. *Flint Cold Storage v Dep't of Treasury*, 285 Mich App 483, 492; 776 NW2d 387 (2009) ("We also review de novo . . . all other questions of law.").

On appeal, plaintiff contends that the documentary evidence established that plaintiff did not dissolve or disband such that it, as an unincorporated voluntary association, had the legal capacity to sue defendant. Before delving into the merits of plaintiff's argument on appeal, we note that both plaintiff and defendant use "standing" and "legal capacity to sue" interchangeably. Our Supreme Court has previously held that "the real-party-in-interest [defense] is not the same as the legal-capacity-to-sue defense." *Leite v Dow Chem Co*, 439 Mich 920; 478 NW2d 892 (1992). This Court has likewise stated that "standing to sue and capacity to sue are two distinct concepts" that should not be improperly conflated. *Flint Cold Storage*, 285 Mich App at 502, citing *Mich Chiropractic Council v Comm'r of Fin & Ins Servs Office*, 475 Mich 363, 374 n 25; 716 NW2d 561 (2006) (opinion by YOUNG, J.), overruled on other grounds by *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 352, 371 & n 18; 792 NW2d 686 (2010); see also, *Le Gassick as Tr of James A Bellamy Tr v Univ of Michigan Regents*, __ Mich App __, __; __ NW2d __ (2019); slip op at 3 n2, citing *Flint Cold Storage*, 285 Mich App at 502. We thus take this opportunity to clarify the difference between these two distinct concepts.

"The purpose of the standing doctrine is to assess whether a litigant's interest in the issue is sufficient to ensure sincere and vigorous advocacy." *Lansing Sch Ed Ass'n*, 487 Mich at 355 (internal quotation marks and citation omitted). "Thus, the standing inquiry focuses on whether a litigant is a proper party to request adjudication of a particular issue and not whether the issue itself is justiciable." *Id*. (quotation marks and citation omitted). In other words, a defense asserting a lack of standing refers to whether a party has the requisite interest in the lawsuit to be allowed to maintain it. A motion based on a lack of standing defense "would be within MCR 2.116(C)(8) or

MCR 2.116(C)(10), depending on the pleadings or other circumstances of the particular case." *Leite*, 439 Mich at 920.

The "lack of legal capacity to sue," on the other hand, refers to a party's inherent inability to initiate *any* lawsuit. This Court has stated, for example, that a lack of capacity to sue "refers to some legal disability, such as infancy or mental incompetency . . . ." *Moorhouse v Ambassador Ins Co, Inc*, 147 Mich App 412, 419; 383 NW2d 219 (1985).[1] This Court has also found that the termination of a corporation's existence implicates the entity's legal capacity to sue. *Flint Cold Storage*, 285 Mich App at 499. Common sense would dictate that a person or entity's very lack of existence would qualify as a legal disability that would deprive it of the ability to sue. A motion based on a lack of legal-capacity-to-sue defense is specifically governed by MCR 2.116(C)(5).

That "standing" and "capacity to sue" are legal terms of art that bear discrete meanings can most easily be seen by reviewing their definitions. "Standing" is defined in *Black's Law Dictionary* (11th ed) as a "party's *right* to make a legal claim or seek judicial enforcement of a duty or right." (emphasis added). *Black's Law Dictionary* (11th ed) defines "capacity," specifically as it applies to the "capacity to sue" as:

> The power to create or enter into a legal relation under the same circumstances in which a normal person would have the power to create or enter into such a relation; spec., the satisfaction of a legal qualification, such as legal age or soundness of mind, that determines one's *ability* to sue or be sued, to enter into a binding contract, and the like. (emphasis added).

Thus, whereas standing concerns itself with a party's *right* to initiate a lawsuit, the capacity to sue addresses a party's *ability* to initiate a lawsuit. Moreover, MCR 2.201(B) states "**Real Party in Interest**. An action must be prosecuted in the name of the real party in interest . . . ." MCR 2.201(C) governs "**Capacity to Sue or Be Sued**" and thereafter specifies, among others, that a natural person, a partnership, a corporation, and an unincorporated voluntary association may sue or be sued in their own names. Were a real party in interest (i.e., one who has standing) and one who has the capacity to be sued the same thing, there would have been no need for them to be set forth in separate portions of MCR 2.201. And, while MCR 2.116(D)(2) requires that challenges based upon MCR 2.116(C)(5) (party lacks legal capacity to sue) be raised in a party's first responsive pleading to avoid being waived, standing is a justicability doctrine that is jurisdictional in nature, may be raised at any time, and may not be waived by the parties. *Mich Chiropractic Council*, 475 Mich at 370-372, overruled on other grounds by *Lansing Sch Ed Ass'n*, 487 Mich 349.

In this matter, defendant recognized in its first responsive pleading that an unincorporated voluntary association may file suit in its association name, but only if it has a distinguishing name

---

[1] Although opinions of this Court issued prior to November 1, 1990 are not binding authority, MCR 7.215(J)(1), we may nonetheless find them persuasive. *Long v Liquor Control Comm*, 322 Mich App 60, 74 n 5; 910 NW2d 674 (2017).

pursuant to MCL 600.2051(2) and MCR 2.201(C)(3). According to defendant, plaintiff disbanded or dissolved. An LLC with the name of "Hastings Dog Park LLC" and an assumed name of "Hastings Dog Park Companions" was thereafter formed and filed appropriate paperwork with the state of Michigan. Defendant asserted that plaintiff therefore did not have a distinguishing name and did not have the legal capacity to sue. Because defendant's defense was clearly premised upon whether plaintiff currently existed as an unincorporated voluntary association with a distinguishing name, the issue for the trial court's resolution was whether plaintiff had the inherent ability to sue. The relevant inquiry here, then, becomes whether the trial court correctly determined that plaintiff did not have the legal capacity (i.e., the inherent ability) to sue.

MCL 600.2051(2) states that "[a] partnership, partnership association, or any unincorporated voluntary association having a distinguishing name may sue or be sued in its partnership or association name, or in the names of any of its members designated as such or both." MCR 2.201(C)(3) likewise provides that "[a] partnership, partnership association, or unincorporated voluntary association having a distinguishing name may sue or be sued in its partnership or association name, in the names of any of its members designated as such, or both."

It is uncontested that plaintiff was an unincorporated voluntary association when the Agreement was signed in 2016. The Agreement was signed by Vicki Butler, acting as chair for plaintiff. In support of its position that plaintiff dissolved (and was thus no longer an entity that could sue or be sued), defendant provided the minutes of a September 28, 2017, closed meeting held by the Hasting Dog Park Committee. At the meeting, a vote was held, wherein a majority of the 8 people present voted to disband the dog park board, close the dog park, and notify defendant of its intent. Votes were passed at the same meeting to "file with the State Attorney General's office of the State of Michigan to close out the 501(C)(3) tax exempt status," to refund monies for memorial bricks that had been purchased, to donate all funds to the Barry County Humane Society, to return all donated items to the donors if they wished, to auction off all equipment and donated items not picked up by donors, and for final dissolution of the Hastings Dog Park and Hastings Dog Park Companions.

However, plaintiff provided evidence that a closed meeting was also held on October 2, 2017, by five of the eight people who were present at the September 28, 2017, closed meeting. The minutes of the October 2, 2017, meeting reflect that a vote was passed to *not* dissolve the Hasting Dog Park and the Dog Park Committee. Votes were also passed at that meeting to accept the resignation of two people from the Dog Park Committee that had been present and voted at the September 28, 2017, closed meeting but were not present at the October 2, 2017 meeting. Plaintiff further provided the affidavit of Christopher Geisert, who was present and voted at both meetings.

Geisert swore that he is the chairman of plaintiff and that plaintiff is an active entity that had not dissolved. Geisert swore that plaintiff pays the insurance for the dog park on the premises and continues to do so. He further swore that after the September 28, 2017, closed meeting, board members met and realized that the meeting was a "rush to judgment, wherein members reacted on their emotions as a result of the treatment by the City," and thereafter voted to continue the business of plaintiff.

As can be seen, there is no question that votes were held on September 28, 2017, and October 2, 2017, that reached different conclusions. While defendant avers that the September 28,

2017, votes could not be "undone," and the trial court agreed, several factors lead this Court to conclude that the trial court erred in its determination.

First and foremost, MCL 600.2140 provides:

> In any suit or proceeding, civil or criminal hereafter instituted in any of the courts of this state, wherein it shall become material or necessary to prove the incorporation of any company or corporation, or the existence of any joint stock company or association, whether the same be a foreign or domestic corporation, company, or association, evidence that such corporation, company, or association is doing business under a certain name shall be prima facie proof of its due incorporation or existence pursuant to law, and of its name.

Thus, there is a presumption that plaintiff exists and of its name.

Second, 2 Mich Civ Jur Associations and Societies § 35 refers to *Sommers v Reynolds*, 103 Mich 307, 309; 61 NW 501 (1894), for the proposition that an association made up of fewer than the original members still has the rights and obligations of the initial group. 2 Mich Civ Jur Associations and Societies § 35 specifically states, "[u]pon the dissolution of an association with the formation of a new one by 10 of the members of the old organization, the new society may have a right to continue the use of a hall under a lease executed to the dissolved society."

Third, the September 28, 2017, meeting took place on a Thursday evening and a majority of plaintiff's committee members met the following Monday to apparently reconsider their September 28, 2017, votes. There has been no authority provided by either party indicating that such an action is disallowed. It appears that minutes were generally taken at each meeting and that each meeting's minutes were thereafter, at later meeting, put to a vote for approval. It may be that the resolutions reached by vote at a meeting are thus not effective until the minutes for that meeting are approved at a later meeting. Perhaps also pertinent to this matter, the September 28, 2017, minutes bear a notification for "Next meeting: October 11, 2017." If, as defendant asserts, plaintiff no longer existed after September 28, 2017, there would be no need for a "next meeting."

Fourth, in an October 5, 2017, email defendant's city manager, Jeff Hastings, inquired of one of the persons who was present and voted at both meetings whether plaintiff intended to file a 90-day notice of termination of the Agreement. That person responded the same day, "Yes, the intent of the Dog Park Companions is to terminate our agreement. As for the 90 day notice most of the board are stepping down as of Wed [sic]," and requested that all further correspondence be directed to another person who was present and voted at both meetings. This email exchange could be viewed to indicate that defendant still recognized plaintiff as the same, existing association, which it expected to file a 90-day notice pursuant to the parties' Agreement. The email also suggests that plaintiff had not, in fact, been dissolved on September 28, 2017, but instead, that most of its board would be stepping down as of October 11, 2017.

"Generally, a motion for summary disposition is premature if granted before discovery on a disputed issue is complete." *Oliver v Smith*, 269 Mich App 560, 567; 715 NW2d 314 (2006) (quotation marks and citation omitted). That long-recognized pronouncement is particularly apt here, where, as acknowledged by defendant, there is a dearth of Michigan authority concerning

-5-

how an unincorporated association properly dissolves and whether the action of dissolution can be "undone." Those issues remain disputed between the party.

That summary disposition was premature is evident not only when reviewing defendant's assertion that plaintiff had dissolved and longer existed, but also with respect to defendant's claim that plaintiff lacked the legal capacity to sue because it did not have a distinguishing name. In his affidavit, Geisert swore that Vicki Butler had resigned as chair of plaintiff as of September 1, 2016; plaintiff provided August 17, 2016, minutes of a meeting showing the same. As also stated by Geisert in his affidavit, Vicki Butler signed the Articles of Organization for Hastings Dog Park, LLC, with a stated assumed name of "Hastings Dog Park Companions" on October 10, 2017, mere days after the October 2, 2017, meeting. Vicki Butler is also the resident agent for the LLC. While this Court expresses no opinion as to whether Hastings Dog Park Companions is a name distinguishable from Hastings Dog Park, LLC, we do opine that if it is proven that plaintiff did not dissolve and continues to exist, it would be questionable whether an LLC using the same, but assumed, name of "Hastings Dog Park Companions" would be permissible. See, e.g., MCL 430.101. However, because no discovery has yet taken place in this matter and because both parties have provided limited support for their respective positions, we find that further discovery could stand a reasonable chance of uncovering factual support for plaintiff's position. *Id*. Thus, summary disposition was inappropriate at this juncture.

We reverse and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.


/s/ Stephen L. Borrello
/s/ Deborah A. Servitto