[File No. Cr. 87.]

STATE OF NORTH DAKOTA, Respondent, v. RAYMOND LYNCH, Appellant.

(243 N. W. 814.)

Opinion filed June 30, 1932. Rehearing denied August 12, 1932.

*F. T. Cuthbert,* for appellant.

*James Morris,* Attorney General, and *Romanus J. Downey,* State's Attorney, for respondent.

NUESSLE, J.   The defendant was informed against for a violation of the prohibition law.   The information charged that at various dates between June 8, 1929, and May 8, 1930, the defendant did wilfully and unlawfully keep for sale intoxicating liquor as a beverage.   The defendant was arraigned and entered a plea of not guilty.   The case was tried to a jury.   At the close of the State's case the defendant moved for a directed verdict and this motion being denied, defendant submitted no evidence.   The jury returned a verdict finding the defendant guilty of the crime of unlawfully keeping for sale intoxicating liquor as a beverage as charged in the information.   Judgment was entered on this verdict.   Thereafter the defendant moved for a new trial.   The motion was denied.   Thereupon the defendant perfected this appeal from the judgment and from the order denying his motion for a new trial.

The record tends to establish the following facts:   On May 8, 1930, Everett Routier, the son and deputy of the sheriff of Ramsey county, was employed on the highway a short distance east of the city of Devils Lake.   On the afternoon of that day he observed the defendant driving east along the highway.   He reported this to the sheriff.   The sheriff and one Wright, a federal prohibition enforcement officer, at once drove out to the place where Everett was.   They stationed themselves along the highway.   About twenty minutes thereafter the defendant, driving a Nash coupe, approached from the east.   The officers signaled him to stop.   Though he was acquainted with the sheriff, instead of stopping he increased his speed and forced them out of the way at the risk of being run down.   He continued his course toward the city, driving rapidly.   Wright and Everett followed him in the latter's Ford coupe. He reached the city limits with the officers in hot pursuit.   He turned into 10th Avenue.   After following this street for a short distance he

turned at right angles into 6th Street. He was then driving at a rate of 25 or 30 miles an hour, slowing at the corners. The officers were about one and a half or two blocks behind him. There are residences along 6th Street. So when he turned off 10th Avenue he was momentarily out of their sight. Soon thereafter he turned off 6th Street and slowed down. The officers pursued him five or six blocks further and finally intercepted him. They searched his car but found nothing. He said "I was lucky that time. You didn't find anything." Meanwhile, the sheriff drove up. He had driven a different way. He took defendant to his office and locked him up. Then the sheriff and Wright at once turned back along the course whence the defendant and Wright had come. They searched the roadside as they went. The witness Mrs. Gilbertson lived on 6th Street, in the third house from 10th Avenue. She testified that on the afternoon of May 8, between five and six o'clock, she was sitting listening to the radio. She looked out of her window and saw two cars, coupes, driving up 6th Street away from 10th Avenue. The second was a Ford. She could not say as to the make of the first. The first car, containing one man, slowed up momentarily in front of her house and, without stopping, the occupant threw a package containing tin cans out on the parking beside the street. A short time afterward the second car, which the witness said contained but one man, followed. Within a few minutes a grocery delivery wagon drove along the street, stopped, and the driver picked up the package which had been thrown out. Though Mrs. Gilbertson as she listened to her radio looked out of her window toward the street, she saw no other cars pass along it. When the sheriff and Wright, retracing the course taken by Wright in pursuit of the defendant came along 6th Street, Mrs. Gilbertson saw them. She came out of her house and asked them if they had lost a package. The sheriff said: "Where is it?" and she told him that the delivery truck had picked it up. The delivery man testified that he had been delivering groceries that afternoon. He drove over to 6th Street in front of Mrs. Gilbertson's house, saw a package, and picked it up. This package contained three tin gallon cans which he later turned over to the sheriff. Just before he picked up the package he was on 5th Street. At that time he observed two cars driving up 10th Avenue at a rate of 25 or 30 miles an hour. Both were coupes. The second was a Ford. The first car was some-

what larger. They turned off 10th Avenue, but he did not observe where. The cans which the delivery man found and later turned over to the sheriff, were sealed and contained a liquid. This liquid was analyzed by a chemist who testified that it was potable ethyl alcohol.

Appellant's first contention is that the evidence is insufficient to sustain the verdict of guilty as returned by the jury, in that it does not warrant a finding that the alcohol which was thrown by the wayside and later recovered by the sheriff was in the possession of the defendant, and that even though the defendant had such alcohol in his possession there is no evidence in the record from which it can be said he had it for unlawful sale as a beverage.

It is true that the evidence is wholly circumstantial. And, as the defendant contends, circumstances that are sufficient only to arouse suspicion will not sustain a conviction. In order to warrant a verdict of guilty on circumstantial evidence alone it must be such as to exclude every reasonable hypothesis other than that of the defendant's guilt. United States v. Reder (D. C.) 69 Fed. 965. But we think the evidence in this case meets this requirement. The defendant fled when he saw the sheriff. Closely pursued, he turned off 10th Avenue into Sixth street and passed the spot where the alcohol was thrown out. He was then momentarily out of sight of his pursuers. Shortly thereafter he slowed the pace at which he was driving and permitted the officers to overtake him. When they searched his car he said: "That time I was lucky. You didn't find anything." Mrs. Gilbertson saw two cars, one closely following the other and corresponding in description to the cars driven by the defendant and the car in which Wright pursued him. She saw the package (later found to contain alcohol) thrown out in front of her house, but she could not identify the occupant of the car from which it was thrown. It is true she says that the second car contained but one person, whereas both Wright and Everett Routier were in the pursuing car. On the other hand, she says that though she was looking out of her window she observed no other two cars pass. Shortly thereafter she saw the delivery man pick up the package. The delivery man who found and picked up the alcohol saw two cars driving up 10th Avenue. They also corresponded in description with the defendant's car and the car which pursued him. These cars were being driven at about the rate of speed to which Wright

testified. They turned off 10th Avenue. About five minutes there-
after the delivery man found the alcohol which was thrown from the
first of the two cars on 6th Street. All of these occurrences took place
within the space of a very few moments. They clearly and certainly
point to the defendant as the driver of the car from which the alcohol
was thrown.

The liquid in the cans which were recovered by the sheriff was
potable alcohol. The prosecution was brought under chapter 83 of
the Penal Code, being §§ 10,092 et seq., Comp. Laws 1913, as
amended. Section 10,128, Comp. Laws 1913, one of the sections con-
tained within chapter 83, provides: ". . . And upon trial of every
. . . information . . . for a violation of the provisions of this
chapter, proof of the finding of intoxicating liquor in the possession
of the accused . . . shall be received and acted upon by the court
or judge as presumptive evidence that such liquor was kept for sale
contrary to the provisions hereof. . . ." The alcohol recovered by
the sheriff was intoxicating liquor. See chapter 175, Sess. Laws 1925.
It was in the possession of the defendant. Presumptively, it was in
his possession for unlawful sale. The defendant did not take the stand
and no evidence was offered as against this presumption. Considered
in connection with the circumstances established in the record, the
presumption is sufficient to warrant the finding as made by the jury
that the alcohol was in the defendant's possession for unlawful sale
as a beverage. State v. Kelly, 22 N. D. 5, 132 N. W. 223, Ann. Cas.
1913E, 974; State v. Barrett, 138 N. C. 630, 50 S. E. 506, 1 L.R.A.
(N.S.) 626, and cases cited.

The defendant assigns numerous errors predicated on rulings touch-
ing the admission of evidence and on remarks of the court made dur-
ing the course of the trial. His principal contention is that the court
admitted both hearsay evidence and immaterial evidence, all of which
was exceedingly prejudicial in its effect.

We have examined the record carefully. Though some of the rul-
ings complained of were technically erroneous, we nevertheless think
they were not prejudicial in view of the other evidence in the record.
Without setting out in detail the record on which these several specifi-
cations are grounded, we will briefly refer to some of the rulings com-

plained of. For instance, the witness Everett Routier testified that as he was working on the highway east of the city of Devils Lake, he saw the defendant driving away from the city. Over objection he was permitted to testify that he reported this fact to the sheriff. And the sheriff, when called as a witness, was asked how it came about that he and Wright drove out on the highway east of the city. Over objection he was permitted to answer that it was because he was called by Everett Routier. Again the court over objection permitted inquiries to be made and answered as to conversations between the sheriff and Mrs. Gilbertson and between the sheriff and the delivery man. These conversations were briefly as to what they had seen and done. All of this testimony apparently was offered and received, not for the purpose of establishing the facts with respect to the pursuit of the defendant, the throwing of the package from the car, the subsequent search for it by the sheriff and its finding and disposition by the delivery man, but rather to show the continuity of what was seen and done by the principal actors. Both Mrs. Gilbertson and the delivery men were called as witnesses by the State, and both testified fully as to what they saw and what they did with respect to these several matters concerning which they had talked with the sheriff. Again, the sheriff was permitted to testify that after the pursuit and after the defendant was overtaken and his car searched he took the defendant to his office and locked him up. Considering the testimony, the admission of which is thus challenged by the defendant, in the light of the whole record, we are convinced that no prejudice resulted from it. During the course of the trial counsel for the defendant and the court engaged in some passages at arms with respect to the admission of some of the evidence to which counsel had objected. In this connection defendant assigns error on account of remarks of the court directed to counsel. We are of the opinion, however, that this controversy between the court and counsel was not such as to have prejudiced the defendant's rights in any manner.

The judgment and the order from which the defendant appeals must be and are affirmed.

CHRISTIANSON, Ch. J., and BURR, BIRDZELL and BURKE, JJ., concur.

On Petition for Rehearing.

Nuessle, J. Defendant has petitioned for a rehearing. He particularly complains on account of this court's holding as to the sufficiency of the evidence to sustain the verdict and challenges the statements in the opinion as to the effect of the testimony of the witness Mrs. Gilbertson. The particular statement on which he chiefly predicates his complaint in this regard, is that wherein the court, speaking of Mrs. Gilbertson's testimony, says: "Mrs. Gilbertson saw two cars, one closely following the other and corresponding in description to the cars driven by the defendant and the car in which Wright pursued him. She saw the package (later found to contain alcohol) thrown out in front of her house, but she could not identify the occupant of the car from which it was thrown. It is true she says that the second car contained but one person, whereas both Wright and Everett Routier were in the pursuing car. *On the other hand, she says that though she was looking out of her window she observed no other two cars pass.*" The sentence in italics is the statement to which the defendant takes exception. The record touching this point is as follows:

"Mrs. H. R. Gilbertson re-called for re-direct examination by Mr. Downey:

"Q. At the time you related of noticing this car throw out this package, where were you looking at the time? A. I was sitting in my home.

"Q. Were you looking out of the window? A. Yes, I was. I was sitting at the radio and that happened to be facing out toward the street.

"Q. Mrs. Gilbertson, did you notice on that day, that afternoon, did you notice any other two cars pass your house close together? A. No, I didn't.

"Q. Did you notice any other two coupes passing at any time? A. No, I didn't.

"Q. These are the only two? A. Yes, sir.

Cross-examination by Mr. Cuthbert:

"Q. At this particular time you say you were listening to the radio? A. Yes, sir.

"Q. You were not watching for cars? A. No, but I happened to be looking out of the window when these cars went by.

"Mr. Cuthbert: That is all.

"Mr. Downey: That is all."

It would seem that the sentence to which the defendant takes exception is justified. Mrs. Gilbertson was listening to her radio. She sat looking out of the window facing the street. She saw two coupes, one closely following the other. She saw the cans thrown from the first. Shortly thereafter she saw the grocery man pick up the cans. Shortly after that she saw the sheriff and Wright searching the roadside. She was enough interested to go out and inquire if they had lost a package. Evidently she was curious. Though she does not say so, the inference must be drawn that she continued to look after she saw the two coupes drive by close together and observed the cans thrown from the first.

Petition denied.

CHRISTIANSON, Ch. J., and BURR, BIRDZELL and BURKE, JJ., concur.